## IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
## IN AND FOR MIAMI DADE COUNTY, FLORIDA

TIMOTHY OLIVER,                                    **CASE NO.:** 2023-018703-CA-01

      Plaintiff,

  v.

UNIVERSITY OF MIAMI.,

      Defendant.

_____/

## <u>SECOND AMENDED COMPLAINT AND JURY DEMAND</u>

Plaintiff, Timothy Oliver, by and through his undersigned counsel, sues the defendant University of Miami., and in support thereof, alleges as follows:

### FIRST CLAIM FOR RELIEF

1.    At all times material hereto, plaintiff, Timothy Oliver (hereinafter "Mr. Oliver or Plaintiff"), is a resident of Miami-Dade County, Florida. He is African-American.

2.    At all times material hereto, defendant University of Miami, (hereinafter referred to as "Defendant"), is a not-for-profit corporation entity existing by virtue of the laws of the State of Florida and conducts a significant amount of business in the State of Florida, with its principal offices in the State of Florida.

3.    This is an action seeking damages in excess of $50,000.00.

4.    All relevant acts complained of herein occurred within Dade County, Florida.

5.    Jurisdiction over the Defendant is predicated upon F.S. 48.193 (1)(b) a and g which provides that a "person, whether or not a citizen or a resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits that person to

the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following:

g)      "Breaching a contract in this State..."

6.      Defendant, University of Miami, by and through its agents, breached an implied contract in the State of Florida, hereinafter more specifically described.

7.      Plaintiff enrolled in the Frost School of Music doctoral program on August 24, 2020, with defendant.

8.      There is an implied contract in fact between plaintiff and defendant. This implied contract was based on the terms and conditions for graduation that were offered by the defendant at the time of enrollment.

9.      The Academic and Graduate Bulletin states in relevant part as follows:

"It is the policy of the University of Miami that no person within the jurisdiction thereof shall, on the basis of race, religion/creed, color, sex, age, disability, sexual orientation, gender identity or expression, veterans status, national origin, or citizenship status be excluded from, participation in, be denied the benefits of, or be subjected to discrimination or harassment (including all forms of sexual harassment and sexual violence) under any program or activity of the University, regardless of whether such program or activity occurs on-campus or off-campus." (Exhibit A)

10.     It further states under the section titled Graduate Appeals Process that:

The Academic community is unanimous in its position that the grade an instructor assigns to a student is the instructor's responsibility and privilege. Any effort to alter this would be a violation of academic freedom. It is the instructor's responsibility to establish criteria for assigning grades. Grounds for appeal of how a grade was assigned are:

1.      Award of a grade based on the student's race, religion, color, sex, age, disability, sexual orientation, gender identity or expression, veteran status, national origin or any other characteristic set forth in the University's Non-Discrimination Policy;

2.      Award of a grade based on conduct that violates the University's anti-harassment or anti-retaliation policies; or

3.      Failure to adhere to the grading criteria established for the course;

4.      Violations of other policies/procedures for grading that are clearly defined in the Faculty Manual.
(Exhibit B)

11.    Defendant breached its own terms and conditions set forth for graduation by discriminating against Mr. Oliver on the basis of race and disability, and violating its own Graduate Appeals Process outlined in the Academic and Graduate Bulletin while he was enrolled at defendant as set forth below. See Exhibits A & B attached.

**The Doctoral Qualifying Jury: A Graduation Requirement**

12.    All undergraduate and graduate Vocal Performance students are required to perform a final jury at the end of each semester. A final jury is a performance of 4-8 musical selections that each student works on throughout the semester with their assigned faculty voice professor, which takes place in front of a panel of all seven voice professors. During this jury, students are graded on memorization of pieces, artistry, musical expression, and technical development. Additionally, Doctoral students are required to sing a specific jury called the Doctoral Qualifying Jury as the first step in the University of Miami's Frost School of Music's Doctoral Qualifying Process. In this exam, two outcomes are possible: Pass or Fail. A passing grade is required to graduate from the Doctoral Program. See Exhibits C & D attached.

**Disability Discrimination and Violation of University Appeals Process**

13.    On September 16, 2021, Plaintiff's voice lessons teacher, and DQJ committee member, Dr. Stephanie Moore, stated that it was very irregular to be experiencing ongoing nasal congestion for several weeks with no progression towards recovering. She suggested he reach out to a doctor to see if medical treatment would help my singing within weekly lessons. Per her suggestion, Mr. Oliver reached out to the Ear, Nose & Throat Department at the University

of Miami Lennar Medical Center the same day to schedule an appointment and copied her in the email confirming his appointment so she would know that Mr. Oliver made the effort to rectify the problem that was making it difficult for her to teach him effectively in weekly voice lessons. Mr. Oliver was first seen on September 28, 2021, when his doctor confirmed he had inflamed nasal polyps, obstructing his ability to breathe through his nose. Therefore, Mr. Oliver was unable to do nasal exercises with his voice teacher in weekly lessons, which helps to solve intonation problems within singing technique.

14.     Then, December 10, 2021, Mr. Oliver performed the Doctoral Qualifying Jury as required per the policy for the Doctoral Qualifying Process. However, following this attempt at the DQJ, Mr. Oliver was informed by Dr. Ragsdale, the Chair of the Vocal Performance Department who evaluates the DQJ for each student, that he did not pass the DQJ based on the singing. Following this decision, on February 4, 2022, Mr. Oliver began phase two of the University of Miami's formal grade appeals process regarding his DQJ, after being formally dismissed from the program in December 2021. This process begins with the Department of Vocal Performance level, may escalade to the School of Music level, and end at The Graduate School. At that time, he received the procedure from the Graduate Studies Office of the Frost School of Music with information detailing the process of appealing a grade or academic outcome based on a medical condition or disability. After thoroughly reading the information, Mr. Oliver submitted a letter in writing detailing a medical condition he had, which affected his ability to learn, that was accompanied by an official doctor's summary of his visit. After being made aware of his condition which made it difficult for him to sing, and properly learn in his voice lessons and vocal coaching classes, the Frost School of Music did not overturn the Vocal Performance Department's decision to exclude him from the school by dismissing him from the

4

program. Instead, on February 24, 2022, he received an official letter, signed by Dr. de l'Etoile, the Associate Dean of the Graduate Studies Office, indicating that the Frost School of Music upheld the decision of the Department of Vocal Performance to dismiss him from the Vocal Performance program.

15.     Mr. Oliver proceeded to have nasal polyp removal surgery at the University of Miami Lennar Hospital on April 29, 2022, showing the medical condition he noted to the Frost School Administration was a serious one.

16.     Thus, the Defendant breached the 2021-2022 Academic and Graduate Bulletin by violating its own discrimination policy which states:

> "It is the policy of the University of Miami that no person within the jurisdiction thereof shall, on the basis of race, religion/creed, color, sex, age, disability, sexual orientation, gender identity or expression, veterans status, national origin, or citizenship status be excluded from, participation in, be denied the benefits of, or be subjected to discrimination or harassment (including all forms of sexual harassment and sexual violence) under any program or activity of the University, regardless of whether such program or activity occurs on-campus or off-campus." (See Exhibit A)

17.     Then, by denying his grade appeal, Defendant violated its own 2021-2022 Graduate Students Appeals Process which states that:

Grounds for appeal of how a grade was assigned are:

> 1.     Award of a grade based on the student's race, religion, color, sex, age, disability, sexual orientation, gender identity or expression, veteran status, national origin or any other characteristic set forth in the University's Non-Discrimination Policy; (See Exhibit B)

18.     Additionally, this was done in direct connection with the DQJ, a pass or fail exam which is a necessary requirement for graduation.

**Failure to Adhere to the Grading Criteria Established For The Course**

19.     The Graduate Appeals process begins with the Department of Vocal Performance level, may escalate to the School of Music level, and end at The Graduate School.

20.     On January 19, 2022, Mr. Oliver wrote Dr. Ragsdale, Chair of the Department of Vocal Performance, a letter requesting to appeal the decision of the faculty based on a violation of policy and a lack of support from the Voice Faculty in preparing for his DQJ in the Fall 2021 semester. Specifically, Mr. Oliver stated that on the bottom of page 4 under section B3 titled: "Doctoral Qualifying Jury Recital," the policy describes the requirements for what is to be sung on the jury, and how the singing will be assessed using the Frost Recital Rubric where one is given a certain number for a score. However, this scoring process is simply an assessment to give one an idea as to what level one is at and whether the areas outlined in the rubric "Needs Improvement," or "Exceeds Requirements." However, a student cannot pass or fail the jury based on the singing. The only portion of the qualifying jury that a student can pass, or fail is found in the following section B4: Oral Defense of the Doctoral Qualifying Jury Program Notes (30-45 minutes). There, it states that after the oral defense, a deliberation happens within the committee and two outcomes are possible: Pass or Fail. As a matter of fact, according to the policy, the two portions of the jury, that is, the oral defense of the program notes and the singing of the repertoire are not even supposed to occur at the same time. The defense is supposed to happen a week before the singing takes place, and thus the student should know whether they have "passed" or "failed" their oral defense before they even sing before the faculty panel, according to what it says. This concept is reinforced again in step 2 of the Doctoral Qualifying Process, in the section that follows under B5: Graduate Qualifying Recital Requirements. While the policy outlines the requirements of the qualifying recital, similarly to the qualifying jury in B3, there is no option to

pass or fail, but simply to receive a formal rating of assessment from the chair of the department. Then, in the last section B6: MVP Vocal Performance Doctoral Qualifying Examination, students can pass or fail the written exam, but no singing is involved in this process. So, according to the policy, only the written exam and oral exam components of the doctoral qualifying process can be passed and/or failed, but the singing portions of the qualifying process cannot. (See Exhibit F)

21.     Then, the following day after Mr. Oliver wrote this message to Dr. Ragsdale, he received an official letter of dismissal from Dean de l'Etoile, the Associate Dean of Graduate Studies. The letter contained a hyperlink that when clicked on, pulls up the Department of Vocal Performance Doctoral Qualifying Process policy. However, the policy had been changed to read that if either component of the Doctoral Qualifying Jury was not passed, whether singing or Oral Defense of program notes, then the jury would not be passed. Additionally, the revised policy stated that the oral defense of the program notes would take place at the same time as the singing of the jury. A copy of this revised policy can be viewed in Exhibit E, attached. The changes noted here can be compared to Exhibit C.

22.     Confused by the new information in this revised policy, Oliver replied to Dean de l'Etoile stating that the link to the policy in her letter of dismissal contained a different policy than the one I was given in Fall 2020, and just so happened to change exactly what Oliver communicated to Dr. Ragsdale just one day prior. She responded to Oliver's email by stating that the document, which is dated August 2021 had been changed in December 2021, and that the change was not communicated to any student.  A PDF of this email conversation can be found in Exhibit G.

23.     After being denied an appeal at both the Department level and the School level, Mr. Oliver began phase 3 of the University's Graduate Appeals Process with The Graduate School on

7

February 28, 2022. Upon reviewing the letter of appeal, Dr. Prado, the Dean of the Graduate School responded to Mr. Oliver's appeal by allowing him another opportunity to write and defend the written program notes in compliance with the Doctoral Qualifying Procedures, and following the Oral Defense, to re-sing the jury portion of the DQJ. However, upon learning that in an exam where the only two possible grades allowed are Pass or Fail, according to the DQP procedures, Mr. Oliver was wrongly given the grade of "Fail," for reasons that were not in the policy, Dr. Prado did not overturn the results of the Qualifying Jury, but simply allowed Mr. Oliver to redo the entire exam again, and denied Mr. Oliver's primary grounds for an appeal with the Graduate School. In fact, Dean Prado's decision letter does not even address the points of concern in Oliver's appeal but simply states how Mr. Oliver was not given an opportunity to orally defend his program notes, when Mr. Oliver never once stated in his letter to Dean Prado that he was not given an opportunity to orally defend his program notes because he was given an opportunity to orally defend his program notes in the December 2021 DQJ.

24.     Once again, by not properly appealing the final grade and denying Mr. Oliver's appeal, this is a blatant violation of the Academic Bulletin's Appeals Process which states:

> The Academic community is unanimous in its position that the grade an instructor assigns to a student is the instructor's responsibility and privilege. Any effort to alter this would be a violation of academic freedom. It is the instructor's responsibility to establish criteria for assigning grades. ***Grounds for appeal of how a grade was assigned are:***
>
> 3.     Failure to adhere to the grading criteria established for the  course; (Exhibit B)

25.     According to the original policy, the grading criteria established for the course is such that only two outcomes are possible in the written portion of the DQJ: Pass or Fail. The singing portion of the DQJ cannot be failed according to the policy. Since Mr. Oliver

passed the written portion of the DQJ in December 2021, and was told by the Chair of the Department that he failed based on the singing, Dr. Prado should have overturned the decision of the DQJ, as it was within his power to do so based on number 3 of the Graduate Student Appeals Process in the Academic Bulletin. "See Exhibit C." Additionally, a copy of the letter written to Dean Prado, and the partially granted/partially denied appeal can be seen on Exhibits G & H.

### Racial Discrimination within the Doctoral Qualifying Jury

26.     When Plaintiff enrolled in the University of Miami, Frost School of Music, on August 24, 2020, for the Fall 2020/Spring 2021 academic year, the Doctoral Program within the Department of Vocal Performance consisted of five individuals: three of whom were returning students from the previous year and the remaining two students were newly admitted. The racial demographic of each of these students consisted of one white male, two white females, one Chinese female, and Plaintiff, the sole African American. All other doctoral students were non-black.

27.     Upon returning for his second academic year, that is, Fall 2021/Spring 2022, the doctoral program within the Department of Vocal Performance at the Frost School of Music consisted of seven individuals: four of whom were returning students from the previous year, and the remaining three students were newly admitted. The racial demographic of each of these students consisted of one white male, one white female, three Chinese females, one Chinese male, and the Plaintiff. Once again, Plaintiff was the sole African American in the Doctoral Program in the Department of Vocal Performance in both years that Plaintiff was enrolled in the University of Miami's Frost School of Music.

28.     In January of 2022, several weeks after the December 2021 DQJ, Plaintiff appealed the decision of the failing sighting very specific points that were not within the policy. The

following day, the Associate Dean of Graduate Studies sent a letter of dismissal containing a hyperlink to the Department of Vocal Performance policy, which had changed each point of the policy. Plaintiff brought up in his letter of appeal that the DQJ took place in December 2021, and the letter of dismissal was given over a month later. No communication was made that the policy was changed.

29.     In fact, when Plaintiff queried Dr. de l'Etoile, the Associate Dean of Graduate Studies, she informed him via email that no communication was made to any of the students in the graduate program. While the appeal of the December 2021 DQJ was partially granted by Dean Prado, the Department used this revised, illegitimate policy to not only fail his final May 2022 attempt at the DQJ but also to tell him that he was not permitted to sing certain special topic repertoire should he proceed to sing a recital, which is the next step of the Doctoral Qualifying Process for students who pass the DQJ. Plaintiff was the only one held to the standards of this policy. After Mr. Oliver was formally dismissed from the program, the policy was changed back to its original state and did not reflect the changes that were made up on the spot regarding what determines a passing/failing grade, and what students are allowed or not allowed to sing in recitals. As the sole African American in the DMA Vocal program, Plaintiff was the only one in the program graded on that new policy in Spring 2022 because no other student took the Doctoral Qualifying Jury exam in the spring 2022 semester. All of the other doctoral students passed in the Fall (December 2021.) As such, the very act of creating a new policy for the May 2022 attempt of the DQJ, solely for Mr. Oliver, the only African American in his program, is in and of itself an act of racial discrimination, and because Mr. Oliver was the only one graded on that policy. Additionally, by changing the policy back to its original criteria the semester following Mr. Oliver's dismissal shows that the revised policy was only made for him.

30.     Once again, this is a breach of contract in direct connection with the DQJ, a requirement for graduation in that the Non-Discrimination Policy of the Academic Bulletin states in relevant manner that:

> *"It is the policy of the University of Miami that no person within the jurisdiction thereof shall, on the basis of race, religion/creed, color, sex, age, disability, sexual orientation, gender identity or expression, veterans status, national origin, or citizenship status be excluded from, participation in, be denied the benefits of, or be subjected to discrimination or harassment (including all forms of sexual harassment and sexual violence) under any program or activity of the University, regardless of whether such program or activity occurs on-campus or off-campus."* (Exhibit A)

31.     Here, Defendant blatantly discriminated against Mr. Oliver on the basis of race by holding him to the standard of a revised policy that no other student was held to in their evaluation of the DQJ. A copy of the policy that was changed back to the original one Mr. Oliver was provided with in September of 2020 can be viewed under Exhibit J, and compared to Exhibits C & E.

**Retaliation Within The Evaluation of The Doctoral Qualifying Jury Evaluation**

**The Following Demographic Information and Discrimination Occurrences Are Included Here to Show the Events that Led To A Formal Internal Investigation Within The University.**

32.     In approximately February 2021, the seven members of the voice faculty collectively make the choice to award TA (Teaching Assistant) positions which provide a tuition waiver plus a stipend to graduate students. Two of the three returning graduate students who applied for a TA were not TAs in the 2020-2021 academic year but were TAs in the 2021-2022 year: Olivia Rich (Caucasian) and Leah Torres (Hispanic). Mr. Oliver was the only one of the returning graduate students (Who expressed interest in a TA) not given the TA position.  Upon information

and belief, it was based on Mr. Oliver's race since Defendant failed to articulate a legitimate reason for him not being given a TA position.

33.     In August of 2020, Mr. Oliver had a virtual Zoom meeting with his Academic Adviser, Professor Alan Johnson, prior to registering for classes for his first semester at the University of Miami, who advised him of what classes he would need to take to stay on a timely track to graduate. Following the meeting, Mr. Oliver came up with the schedule based on the meeting. Per his approval, Mr. Oliver registered for classes, one of which included MTC 717: Music Theory Analytical Techniques. Thereafter, in February 2021, Mr. Oliver was in conversation with the other doctoral students in the program during that time. He asked them about their experiences with music theory because he received a B- in the course and not a B. Each one of them told Mr. Oliver that they were advised by Alan Johnson to take a different theory class called MTC 711: Music Theory Pedagogy, a far less vigorous course. Additionally, each one of them passed the course with the grade of an A. In May of 2021, Mr. Oliver reported this information to Dr. de l'Etoile, the Associate Dean of Graduate Studies that he felt that this may have been discriminatory.

34.     On August 23rd, 2021, Mr. Oliver enrolled in a Pass/Fail 0-Credit Hour course called MVP8: Voice Forum. The class is designed to allow vocal performance students an opportunity to perform the musical repertoire they study throughout the semester in front of an audience of students, faculty, and staff, and meets every Friday from 2:15 pm-3:05 pm. Because of the large number of vocal music students in the program, the weekly performances that occur each Friday afternoon are scheduled in groups of approximately 8 students, as the 50-minute class time interval only allows 8 students to sing one of their pieces before the audience. The entire vocal performance student body was divided into 6 groups of approximately 8 students in each

of the 6 groups which are scheduled based on class (Freshman, Sophomores, Juniors/Seniors, etc.). These groups were scheduled to sing on various Fridays throughout the semester. Mr. Oliver noticed that the first group of students who were scheduled to sing on Friday, September 3rd, in the first Voice Forum performance of the semester were labeled as "Group 1: Veterans." This group contained all the names of the returning graduate students from the previous year, both Master's and Doctorate, except Mr. Oliver. However, with the second group of students scheduled to sing on the following Friday, September 10th, labeled as "Group 2: New Grads," Mr. Oliver found his name, "Timothy Oliver" on this list of incoming graduate students, who were beginning their first year of school at Frost. Of the 4 returning doctoral students in the Voice program, as well as the 3 newly admitted doctoral students, Plaintiff was the only one miscategorized, being the sole African American in the doctoral program of the Vocal Performance program.)

35.     Mr. Oliver should have been placed on the same list as all the other returning graduate students, in Group 1. Somehow, in the entire department of Vocal Performance, all of the students were categorized correctly, but Mr. Oliver was the only student who was on the wrong list and sang with the new students. Upon information and belief, the Plaintiff was subjected to disparate treatment due to his race.

36.     At the end of each semester, all undergraduate and graduate Vocal Performance students are required to perform a final jury. A final jury is a performance of 4-8 musical selections, depending on the year of the student, that each student works on throughout the semester with their assigned faculty voice professor, that takes place in front of a panel of all 7 of the voice professors. During this jury, students are graded on memorization of pieces, artistry, musical expression, and technical development. Typically, all voice students are asked to sign up for a 10-

minute jury time, that ranges from approximately 9:30 am to 6:00 pm, approximately one and half weeks before the scheduled date of juries, which in the Fall 2021 semester, took place on Friday.

37.    On December 10, 2021. On Wednesday, December 1, 2021, Mr. Oliver texted his voice teacher, Dr. Moore, asking if she knew when juries were scheduled because he had not received any information regarding Fall 2021 juries as he had this time last year. She responded by saying, "Weird, there have been a number of emails that have gone out from Dr. Ragsdale, the Department Chair," and suggested Mr. Oliver reach out to him for information.

38.    Mr. Oliver then emailed Dr. Ragsdale stating that all semester long, he had not been included on his Department of Vocal Performance listserv, where important emails regarding announcements, professional audition opportunities, and most importantly, end-of-semester jury sign-up information are sent to the students.

39.    Dr. Ragsdale responded to Mr. Oliver's email and forwarded him the information to sign up for a jury. Since Mr. Oliver was the last one to sign up due to not receiving the email regarding juries, Mr. Oliver was initially stuck with a 9:27 am slot, which is not an ideal time for singing high notes.

40.    Mr. Oliver was eventually able to move that time and was able to sing at the end of the allotted jury times, instead of at the beginning because all the other times were taken. Mr. Oliver agreed to sing at 5:57 pm, which was the last time slot because it is much easier to sing in the evening than in the morning.

41.    However, since all the other jury sign-up times had been taken, that meant that Mr. Oliver was the only one who was left off of the Vocal Performance Student listserv email list, despite having been told by him initially that he was not the only one who that had happened

to, which is why the only two options for his jury times were either at the beginning or the end of the list of times allotted.

### Workplace Assessment With The Office of Diversity, Equity, and Inclusion

42.    Mr. Oliver complained about discriminatory treatment in December 2021. The complaints dealt with several incidents regarding unequal treatment set forth above. The school conducted an investigation treating the complaints as discrimination based on race and religion.

43.    On February 10, 2022, the Frost School forwarded the complaint to the Office of Diversity, Equity, and Inclusion after Plaintiff complained in December 2021, who concluded that Mr. Oliver's complaints based on race and religion were unsubstantiated.

### Blatant Retaliation in Direct Connection to the Doctoral Qualifying Jury, Which is Required for Graduation

44.    Doctoral students are required to sing a specific jury called the Doctoral Qualifying Jury as the first step in the Doctoral Qualifying Process. Per the Doctoral Qualifying Process, before performing the jury before the Department of Vocal Performance Faculty, doctoral students are required to submit written program notes to the Voice Faculty, which are descriptive notes that summarize the pieces they will sing at the time of the jury. Subsequently, program notes are orally defended before the Voice Faculty to demonstrate the knowledge of the music.

45.    On December 3, 2021, Mr. Oliver submitted program notes to the Vocal Performance Faculty a week before singing his Fall 2021 attempt at the DQJ.

46.    Less than three hours later, Mr. Oliver submitted revised program notes to the faculty because, during that 3-hour time frame, he had a thirty-minute vocal coaching session with Professor Johnson.

47.     Professor Johnson's feedback to Mr. Oliver was that he should maintain the scholarly writing that discusses each piece's historical and musical elements but should also include something about how the music affects Mr. Oliver emotionally and inspires him.

48.     Relying on Professor Johnson's counsel, Mr. Oliver added to each of the selections of his Fall 2021 program notes. He sent the revised document to the MVP faculty approximately three hours after the first document was sent.

49.     Mr. Oliver proceeded to orally defend his program notes at the time of his jury in December one week later. He passed his oral examination of the written program notes.

50.     Per the policy describing the Doctoral Qualifying Jury (DQJ): The policy states that in regard to the Oral Defense of the Program Notes, only two possible outcomes will be given: Pass or Fail. If Professor Johnson or any of the other faculty members on the committee did not feel that Mr. Oliver's Program Notes were not at the doctoral level in December 2021, per the policy, they should have stated that at the time of the defense. However, Mr. Oliver passed the Oral Defense in December and no professor made any mention of the lack of quality of Mr. Oliver's program notes at that time, but instead, gave him a passing grade.

51.     Subsequently, on Friday, May 6, 2022, while reattempting the DQJ, Mr. Oliver orally defended his program notes for the end-of-semester Doctoral Qualifying Jury. The Spring 2022 program notes incorporated the advice previously given to Mr. Oliver by Professor Johnson in December 2021, specifically including the inspirational elements to the descriptive notes, following the notes' scholarly portion. However, after the exam, deliberation took place in the Department of Vocal Performance without Mr. Oliver in the room.

52.     After the deliberation, Mr. Oliver was invited to reenter the room, where the Voice Faculty informed him that he had not passed his oral defense of the program notes. Thereafter,

Dr. Ragsdale, the Department of Vocal Performance Chair, emailed Mr. Oliver that he had failed

his exam. The email stated in pertinent part:

> "Scholarly – As you remember, this is the primary concern of the faulty. Scholarly writing should not contain first-person point of view or personal references about your feelings."

53.     Here, the MVP faculty unanimously failed the Oral Defense portion of Mr. Oliver's DQJ

due to incorporating inspirational elements. This is the same reason that Professor Johnson gave

Mr. Oliver what to incorporate into his notes. The failing grade on May 6, 2022, occurred after the

February 2022 Department of Vocal Performance Faculty investigation regarding discrimination

concerns concluded. This reflects an obvious act of retaliation by the Frost School by failing him

in that examination for the very reasons the faculty encouraged him to incorporate the semester

prior.

54.     Once again, the Academic Bulletin states that:

> "It is the policy of the University of Miami that no person within the jurisdiction thereof shall, on the basis of race, religion/creed, color, sex, age, disability, sexual orientation, gender identity or expression, veterans status, national origin, or citizenship status be excluded from, participation in, be denied the benefits of, or be subjected to discrimination or harassment (including all forms of sexual harassment and sexual violence) under any program or activity of the University, regardless of whether such program or activity occurs on-campus or off-campus." (Exhibit A)

Also, implied in that policy is to not retaliate against a student who complains about

discrimination.

55.     Furthermore, the University's intolerance of a grade given out of retaliation is echoed in

the Academic Bulletin's policy, which provides that:

> The Academic community is unanimous in its position that the grade an instructor assigns to a student is the instructor's responsibility and privilege. Any effort to alter this would be a violation of academic freedom. It is the instructor's responsibility to establish criteria for

assigning grades. Grounds for appeal of how a grade was assigned are:

1.      Award of a grade based on the student's race, religion, color, sex, age, disability, sexual orientation, gender identity or expression, veteran status, national origin or any other characteristic set forth in the University's Non-Discrimination Policy;

2.      ***Award of a grade based on conduct that violates the University's*** anti-harassment or **anti-retaliation** policies; or

3.      Failure to adhere to the grading criteria established for the course;

4.      Violations of other policies/procedures for grading that are clearly defined in the Faculty Manual.
(Exhibit B)

56.     Here, the awarding of the Failing grade was not only contradictory to their own advice but retaliatory following Mr. Oliver's formal allegations of discrimination specifically violating its own policies

**Damages Caused As A Result of Breached Contract**

57.     Due to Mr. Oliver not being awarded a Teaching Assistantship, which provides a full-tuition waiver, Mr. Oliver's out-of-pocket expenses for attending the University of Miami for two years on only a 50% tuition waiver scholarship totaled an excess of $100,000 as itemized in the University's Graduate Cost of attendance page found at https://grad-prof.miami.edu/cost/graduate-costs/graduate-student-cost-folder/index.html.

58.     As a result of the forgoing, the defendant breached the implied contract with the plaintiff resulting in plaintiff being dismissed from the program and not graduating due to racial and disability discrimination, retaliation after alleging such discrimination, and numerous accounts of policy violation in connection with requirements for graduation.

59.     As a result of the foregoing, the defendant breached the implied contract with plaintiff, resulting in plaintiff not being conferred a degree from the program and being damaged in an

amount in excess of Fifty Thousand Dollars ($50,000.000).

60.     Plaintiff has exhausted all internal administrative remedies and has satisfied all conditions precedent prior to the commencement of this suit.

## SECOND CLAIM FOR RELIEF-TITLE VI-RACE

61.     Plaintiff repeats and realleges paragraphs numbered 1, 2, 3, 4, 7, 9 thru 57. 59, and 60 as if fully set forth at length herein.

62.     This action seeks damages, injunctive relief, attorneys' fees, and other appropriate equitable and legal relief on behalf of Plaintiff as a result of Defendants' violation of his civil rights.

63.     This action is brought to remedy discrimination on the basis of race pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000(d), et seq.

64.     Plaintiff seeks compensatory damages and other appropriate relief pursuant to Title VI.

65.     Defendants have breached their duty of non-discrimination.

66.     Defendant is a recipient of federal financial assistance.

67.     Defendant is under a duty not to discriminate based on race or practices that discourage enrollment or involvement with a school such as Defendant that receives federal funds.

68.     Plaintiff, as an African-American is a member of a protected class and  beneficiary of this non-discrimination mandate.

69.     Defendant has breached their duty of non-discrimination.

70.     The Court has concurrent subject-matter jurisdiction over Plaintiff's federal claims.

71.     Title VI prohibits discrimination based on an individual's race  in  programs and activities and retaliation receiving federal financial assistance such as Defendant.

72.     Plaintiff's race (African-American) is a member of a protected  class.

73.     The Defendants were deliberately indifferent and subjected him to disparate treatment due to Plaintiff's race which in turn caused his dismissal from Defendant.

74.     Plaintiff was deprived of educational benefits as a result of the harassment and disparate treatment: (1) a supportive, scholastic environment free of discrimination and harassment and (2) the ability to complete his education.

75.     As a direct and proximate result of Defendants' unlawful race discrimination which caused his dismissal, Plaintiff suffered  and will continue to suffer harm,  including but not limited to a loss of educational opportunities,  humiliation, embarrassment, reputational harm, emotional, physical, and psychological distress,  and other damages.

### THIRD CLAIM FOR RELIEF-TITLE VI-RETALIATION

76.     Plaintiff repeats and realleges paragraphs numbered 1, 2, 3, 4, 7, 9 thru 57. 59, and 60  as if fully set forth at length herein.

77.     This action seeks damages, injunctive relief, attorneys' fees, and other appropriate equitable and legal relief on behalf of Plaintiff as a result of Defendants' violation of his civil rights.

78.     This action is brought to remedy retaliation after Plaintiff complained about race discrimination pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000(d), et seq.

79.     Plaintiff seeks compensatory damages and other appropriate relief pursuant to Title VI.

80.     Defendant is under a duty not to retaliate or practices which discourage enrollment or involvement with that receives federal funds, nor retaliate for complaining about discrimination.

81.     Based on the foregoing, Plaintiff, as an African-American is a member of a protected class and beneficiary of this non-retaliation mandate.

82.     Defendant has breached their duty of not to retaliate.

83.     The Court has concurrent subject-matter jurisdiction over Plaintiff's federal claims.

84.     Title VI prohibits discrimination based on retaliation in programs and activities and retaliation from Defendant who receives federal financial assistance.

85.     Plaintiff (African-American) complained about race discrimination and as such, is a member of a protected class.

86.     The Defendants were deliberately indifferent and subjected him to a hostile educational environment and disparate treatment due to retaliation.

87.     Plaintiff was deprived of educational benefits as a result of the harassment and disparate treatment: (1) a supportive, scholastic environment free of discrimination and harassment and (2) the ability to complete his education.

88.     As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff suffered and will continue to suffer harm, including but not limited to a loss of educational opportunities, humiliation, embarrassment, reputational harm, emotional, physical, and psychological distress, and other damage.

**FOURTH CLAIM FOR RELIEF-1981-RACE**

89.     Plaintiff repeats and realleges paragraphs numbered 1, 2, 3, 4, 5, 6, 7, 8, 9 thru 57. 58, 59, and 60  as if fully set forth length herein.

90.     This action is brought to remedy discrimination on the basis of Plaintiff's race in violation of 42 U.S.C. § 1981 ("Section 1981").

91.     Plaintiff seeks compensatory and punitive damages and other appropriate relief pursuant to Section 1981.

92.     Defendant's discriminatory actions against Plaintiff and discriminatory application of its disciplinary procedures with respect to the dismissal of Plaintiff on account of his race violated

the Civil Rights Act of 866 (42 U.S.C. § 1981) as amended by the Civil Rights Restoration Act of 1991.

93.    Defendant has violated Section 1981 by depriving plaintiff of his equal rights under the law by subjecting plaintiff to disparate treatment and a hostile environment and by dismissing him because he is African-American.

94.    Defendant's actions deprived plaintiff of the equal right to make and enforce contracts, including his right to enjoy the benefits, privileges, terms, and conditions of his contractual relationship with defendant.

95.    Defendant knew that their actions constituted unlawful discrimination on the basis of race, (African-American, discriminatory dismissal) and/or showed reckless disregard for plaintiff's statutorily protected rights.

96.    As a proximate cause of Defendants' conduct and discriminatory actions, Plaintiff has suffered injury, harm, and damages, and has had his contractual rights respecting his existing and future employment impaired, interfered with, and/or terminated and Defendants have otherwise impaired and interfered with Plaintiff's right to make and enforce contracts including the making performance, modification and termination of contracts and the enjoyment of all benefits, privileges, terms and condition of the contractual relationship. Plaintiff has suffered damages as a result of defendants' discriminatory conduct.

97.    As a proximate cause of Defendant's actions, Plaintiff has suffered and continues suffering severe and lasting embarrassment, humiliation, anguish, and other incidental and consequential damages and expenses, and has lost back pay, and benefits.

98.    The Defendant's conduct is shocking, outrageous, and malicious, exceeds all bounds of acceptable behavior, and is intolerable in a civilized society and did the foregoing with conscious

disregard for Plaintiff's civil rights thereby entitling Plaintiff to an award of punitive damages against defendant.

## FIFTH CLAIM FOR RELIEF-1981-RETALIATION

99.     Plaintiff repeats and realleges paragraphs numbered paragraphs numbered 1, 2, 3, 4, 5, 6, 7, 8, 9 thru 57. 58, 59, and 60  as if fully set forth length herein.

100.    This action is brought to remedy discrimination on the basis of retaliation in violation of 42 U.S.C. § 1981 ("Section 1981"),

101.    Plaintiff seeks compensatory and punitive damages and other appropriate relief pursuant to Section 1981.

102.    Defendant's discriminatory actions against Plaintiff, and discriminatory application of its disciplinary procedures with respect to Plaintiff, caused his dismissal of Plaintiff on account of retaliation by violating the Civil Rights Act of 866 (42 U.S.C. § 1981) as amended by the Civil Rights Restoration Act of 1991.

103.    Defendant has violated Section 1981 by depriving the plaintiff of his equal rights under the law by subjecting plaintiff to disparate treatment and by dismissing him because of retaliation.

104.    Defendant's actions deprived plaintiff of the equal right to make and enforce contracts, including his right to enjoy the benefits, privileges, terms, and conditions of his contractual relationship with defendant.

105.    Defendant knew that their actions constituted unlawful discrimination on the basis of retaliation, (retaliatory dismissal) and/or showed reckless disregard for plaintiff's statutorily protected rights.

106.    As a proximate cause of Defendants' conduct, Plaintiff has suffered injury, harm, and

damages, and has had his contractual rights respecting his existing and future school enrollment impaired, interfered with, and/or terminated and Defendants have otherwise impaired and interfered with Plaintiff's right to make and enforce contracts including the making performance, modification and termination of contracts and the enjoyment of all benefits, privileges, terms, and condition of the contractual relationship.

107.   Plaintiff has suffered damages as a result of the defendant's retaliatory conduct.

108.   As a proximate cause of Defendant's actions, Plaintiff has suffered and continues suffering severe and lasting embarrassment, humiliation, anguish, and other incidental and consequential damages and expenses, and has lost back pay, and benefits.

109.   The Defendant's conduct is shocking, outrageous, and malicious, exceeds all bounds of acceptable behavior, and is intolerable in a civilized society and did the foregoing with conscious disregard for Plaintiff's civil rights thereby entitling Plaintiff to an award of punitive damages against the defendant.

WHEREFORE, (1) plaintiff, Timothy Oliver, demands damages against the defendant University of Miami, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, special damages for a lost career as a result of not obtaining a doctorate degree including the salary he would have earned if plaintiff was conferred a doctorate, granting compensatory damages for injuries and accompanying pain and suffering, tuition reimbursement, career lost earnings, and other damages sustained by Plaintiff; injunctive relief compelling Defendant, punitive damages, to reinstate plaintiff into the program, and any other relief that is just and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands trial by jury on all issues so triable as a matter of right.

Dated: Fort Lauderdale, Florida
        December 29, 2023

                              STEWART LEE KARLIN
                              LAW GROUP, PC


                              STEWART LEE KARLIN, ESQ
                              Attorney for Plaintiff
                              2003 W Cypress Creek Road, Suite 100
                              Fort Lauderdale, FL 33309
                              (212) 792-9670
                              slk@stewartkarlin.com
                              Florida Bar No. 0961159

# EXHIBIT "A"

# GENERAL UNIVERSITY INFORMATION

A private, independent, international university

An equal opportunity/affirmative action employer

An announcement with information on administration, organization, admission and graduation requirements, and the courses of instruction in:

## Undergraduate and Graduate Studies, 2021-2022

It is the policy of the University of Miami that no person within the jurisdiction thereof shall, on the basis of race, religion/creed, color, sex, age, disability, sexual orientation, gender identity or expression, veterans status, national origin, or citizenship status be excluded from, participation in, be denied the benefits of, or be subjected to discrimination or harassment (including all forms of sexual harassment and sexual violence) under any program or activity of the University, regardless of whether such program or activity occurs on-campus or off-campus. The University does not intend by this commitment to require compliance with this policy by governmental or external organizations that associate with but are not controlled by the University, except as required by law. The Office of Workplace Equity and Inclusion is responsible for coordinating the University's effort to implement the nondiscrimination policy and Affirmative Action Programs for employees and students. The Office of Workplace Equity and Inclusion may be contacted at the following address or telephone number.

> Workplace Equity and Inclusion
>
> Gables One Tower, Suite 355
>
> Email: wei@miami.edu (http://bulletin.miami.edu/general-university-information/wei@miami.edu)
>
> Phone: (305) 284-3064

More information regarding the student sexual harassment/violence policy may be found online in the Student Rights and Responsibilities Handbook (http://www.miami.edu/SRR/). For available resources and services contact the Dean of Students Office (http://www.miami.edu/sa/index.php/dean_of_students/), Phone: 305-284-5353; the Counseling Center (http://www.miami.edu/sa/index.php/counseling_center/), Phone: 305-284-5511; and/or the Sexual Assault Response Team (http://www.miami.edu/sa/index.php/counseling_center/current_students/special_programs/sexual_assault_response_team_sart/) (S.A.R.T).

The University of Miami is authorized under Federal law to enroll non-immigrant alien students.

The University reserves the right to change any provision or requirement, including, but not limited to fees and tuition, at any time without notice. Degrees, courses, programs, activities, and like academic or non-academic offerings of the University may also be changed from time to time without notice. The University further reserves the right to require a student to withdraw at any time under University policies, as may be promulgated from time to time. Further, admission of a student to the University of Miami for any semester does not imply that such student will be enrolled in any succeeding academic semesters. It also reserves the right to impose sanctions on any student whose conduct is unsatisfactory. Any admission on the basis of false statements or documents is void when the misconduct is discovered, and the student is not entitled to any credit hour for work which the student may have done at the University prior to any discipline that may be taken as a result of such misconduct. When a student is dismissed or suspended from the University for cause, there will be no refund of tuition or fees paid. If a dismissed student has paid only a part of his tuition and fees, the balance due the University will be considered a receivable and will be collected.

There will be no refund of tuition, fees, charges or any other payments made to the University in the event the operation of the University is suspended at any time as a result of any act of God, strike, riot, disruption, or for any other reason beyond the control of the University.

The University of Miami is accredited by the Southern Association of Colleges and Schools Commission on Colleges to award bachelor's, master's, educational specialist, and doctoral degrees. Contact the Southern Association of Colleges and Schools Commission on Colleges (https://sacscoc.org/) at 1866 Southern Lane, Decatur, Georgia 30033-4097 or call 404-679-4500 for questions about the accreditation of the University of Miami.

The University of Miami is an approved member of the National Council for State Authorization Reciprocity Agreements (NC-SARA) which is recognized by 49 states and the District of Columbia, Puerto Rico, and the U.S. Virgin Islands. The University of Miami is not required to have state authorization for distance education in California which is not a member of NC-SARA. A full list of state agencies is published on this website (https://ua.miami.edu/state-authorizations-for-distance-education/student-complaints-related-to-distance-education/).

## Mission Statement

The mission of the University of Miami is to transform lives through education, research, innovation, and service.

# EXHIBIT "B"

## Graduate School of Business Repeat Rule

Graduate students in the Miami Herbert Business School who fall below the 3.0 GPA may be placed on academic probation. Within one semester after their GPA falling below 3.0, Master's students wishing to repeat a course may petition their program director to do so.  If the petition is approved by the Graduate Program Director, the grade obtained in their second attempt will replace the original grade for purposes of calculating their GPA for clearance for graduation only.  Authorization to repeat a course is limited to courses in which an unsatisfactory grade was earned (as determined by the Graduate Program Director).  Additionally, a course may be repeated only once and students may not repeat more than two courses.  The student's transcripts will continue to show all attempts and the GPA computation will include all grades earned for purposes other than computing the GPA for clearance for graduation.  If a course in which an unsatisfactory grade of lower than a B- was earned is repeated and the repeat grade is "C-" or higher, the number of credits required for graduation will be increased by the number of credits repeated.  Registrations which involve repeating a course in which a grade of "A" or "B" has already been earned may not earn quality points or credit hours, nor count as credits attempted.

# Graduate Student Grade Appeal Process

The Academic community is unanimous in its position that the grade an instructor assigns to a student is the instructor's responsibility and privilege. Any effort to alter this would be a violation of academic freedom. It is the instructor's responsibility to establish criteria for assigning grades. Grounds for appeal of how a grade was assigned are:

1. Award of a grade based on the student's race, religion, color, sex, age, disability, sexual orientation, gender identity or expression, veteran status, national origin or any other characteristic set forth in the University's Non-Discrimination Policy;

2. Award of a grade based on conduct that violates the University's anti-harassment or anti-retaliation policies; or

3. Failure to adhere to the grading criteria established for the course;

4. Violations of other policies/procedures for grading that are clearly defined in the *Faculty Manual*.

The Faculty Senate Student Affairs Committee (FSSAC) has responsibility for graduate student grade appeals, except for MD and JD programs. To facilitate grade appeals from graduate students, the FSSAC will have a non-voting *ex officio* faculty representative of the Graduate School. The FSSAC reviews graduate student grade appeals that have not been resolved at the department, school/college, or Graduate School levels. The FSSAC reserves the right to not hear appeals that require extensive knowledge of specialized or technical issues, including but not limited to, dissertations, theses, qualifying exams, recitals, and clinical/research assignments. The Graduate School has responsibility for all other graduate academic appeals.

## I. Time Constraints

The appeal process must be initiated before the completion of the following semester (i.e. ,Fall or Spring) of the assignment of the grade resulting in appeal and prior to the completion of all degree requirements or withdrawal from the University. Each level of appeal should aim to review the appeal and deliver a judgement within a 20 academic day period from the date the appeal is submitted. The entire process should be completed within one calendar year. Exceptions to this deadline may be permitted by the FSSAC  for good cause.

### Timeline Goals:
1. Student Appeal to the Graduate School Level must follow completion of all internal (i.e., home School or College) grade resolution and/or appeals processes, and then has 20 academic days from the completion date of the internal process to contact the Academic Ombudsperson and/or directly to the Dean of the Graduate School regarding an appeal.

2. Academic Ombudsperson has 20 academic days to review, provide a preliminary assessment to the student about whether it is reviewable by FSSAC, after receiving information from the student.  The student may appeal directly to the Dean of the Graduate School (step 3).

3. The Dean of the Graduate School has 20 academic days to review, decide whether to forward to FSSAC, after receiving all information from the student.

4. FSSAC has 20 academic days to review/hear appeal, and to submit recommendation to Dean of Graduate School.

5. Dean of the Graduate School has 20 academic days to review recommendation of the FSSAC, and to inform student of final decision.

## II.  Order of the Appeal

Attempts to resolve issues regarding a grade must be addressed to the following entities or persons in this order:

1. The faculty member of administrator responsible for the course, program or activity.

2. The department/program chair/director and/or administrative superior(s) of the faculty member or administrator.

3. The Dean or designee of the school or college offering the course, program, or activity. If the school, college or administrative unit has a committee constituted to hear graduate student appeals, that committee must be consulted be fore proceeding to the next level, i.e., for advice from the Ombudsperson or appeal to the Graduate School.

4. The student is to provide the materials listed in Section IV below to the Academic Ombudsperson who will review the merits of the potential appeal, and attempt to resolve the matter. The Academic Ombudsperson, as part of his/her review should give the student a preliminary assessment as to whether the mater, as presented by the student at that time, is reviewable by FSSAC. After, and only if, all other steps are taken, the Ombudsperson may refer the matter to the Dean of the Graduate School.

5. Appeal to the Graduate School Level.  If the student has exhausted all levels of appeals in their School/College and has consulted with the Ombudsperson, then the student is to provide the materials listed in Section IV below to the Dean of the Graduate School, who will review the

# EXHIBIT "C"

October 2016

## Doctoral Qualifying Process Procedures
## Department of Vocal Performance

**Defined:** The Doctoral Qualifying Process (DQP) in Vocal Performance is an extended, rigorous process through which the accumulated lifetime knowledge, experience, and performance ability of an applicant can be determined to be adequate to pursue independent performance or research projects at a professional level.

**Components:** NASM requires that all students of the Frost School demonstrate proficiency in musicology and music theory. Programs may demand additional requirements, with approval of the Department Chair. Each program within the MVP department, in consultation with Frost MTC and MCY departments, shall determine an acceptable course of action regarding how these criteria may be satisfied.

**Timing:** All components of the DQP must be successfully completed before a student can apply for and be granted Doctoral Candidacy status.  The qualifying coursework in musicology and music theory must be completed with a passing grade as seen on a transcript, before the student can apply for candidacy.  This means this coursework should be taken within the first three semesters of the DMA in Vocal Performance.

## DOCTOR OF MUSICAL ARTS in VOCAL PERFORMANCE

A1. The DQP (Doctoral Qualifying Process) for the Doctor of Musical Arts in Vocal Performance will be comprised of the following components:

1. Doctoral Qualifying Jury Recital
2. Doctoral Qualifying Recital
3. MVP Doctoral Qualifying Examination

A2. No part of the DQP may be taken before the 3rd semester of study, with the exception of the Doctoral Qualifying Jury Recital, which will be scheduled during the MVP Jury time at the end of the first semester. The Doctoral Qualifying Examination exam is administered once per semester by the Department of Vocal Performance.

A2a. **Good standing:** All students shall be matriculated and remain in current good standing with the Frost School throughout all components of the DQP.  Good standing is defined as no grade lower than a B in any course.  Should the student fail to remain in good standing, any components either completed or in progress may not be counted

toward the DQP.

<div style="border:1px solid">

**Major Requirements for DMA Vocal Performance majors**

1. Doctoral Qualifying Jury Recital (1/2 hour)
   a. Completed during 1st semester of study and no later than 2nd semester of study.
   b. Must be satisfactorily completed *before* scheduling Doctoral Qualifying Recital
   c. Students are allowed to reattempt once, no earlier than the semester following the initial attempt.
   d. Program notes will be submitted and orally defended at the Qualifying Jury Recital.
2. MVP Doctoral Qualifying Exam
   a. No earlier than 3rd semester of study
   b. Administered by the department once per semester
   c. Students are allowed to reattempt once, no earlier than the semester following the initial attempt
3. Doctoral Qualifying Recital (1 hour)
   a. No earlier than 3rd semester of study
   b. Must be satisfactorily completed *before* scheduling the other required Doctoral degree recitals
   c. Students are allowed to reattempt once, no earlier than the semester following the initial attempt.
4. Doctoral Recital (55-60 minutes of music) with program notes.
4. Doctoral Recital (55-60 minutes of music) with program notes.
5. DMA Essay Proposal Defense
6. DMA Essay Defense

</div>

A2b. **Recommended Schedule**

| Year 1 | Approved DQE coursework<br>Doctoral Qualifying Jury Recital<br>Oral Defense of Qualifying Jury Recital program notes | Approved DQE coursework<br>Doctoral Qualifying Recital (spring option)*<br>*Oral Defense of Qualifying Recital program notes<br><br>OR<br><br>Doctoral Qualifying Jury Recital (spring option)<br>*Oral Defense of Qualifying Jury Recital program notes |
| --- | --- | --- |

| Year 2 | Approved DQE coursework<br>MVP Doctoral Qualifying Exam<br>Doctoral Qualifying Recital (late option)<br>*Oral Defense of Qualifying Recital program notes (late option)<br>2nd Doctoral Recital (fall option) | MVP Doctoral Qualifying Exam (spring option)<br>Doctoral Essay Proposal Defense (standard track)<br>2nd Doctoral Recital |
| Year 3 | 3rd Doctoral Recital (fall option)<br>Doctoral Essay Proposal Defense (late track) | 3rd Doctoral Recital (spring option)<br>Doctoral Essay Defense |

B.      DQE Component Requirements

B1.      *Musicology general knowledge* requirements

The Musicology general knowledge exam component of the DQP will be satisfied by successful completion of ONE of the following courses with a grade of B or higher. These courses must be completed with a grade of B or higher, prior to the student being able to apply for candidacy.  Ideally, students should take one of these courses in their first year.  The acceptable courses are:

| MCY 622 | Operatic Literature | 3 | Spring, offered yearly |
| MCY 625 | Art Song Literature | 3 | Spring, offered yearly |
| MCY 683 | History of the American Musical Theatre* | 3 | Fall, offered yearly |
| MCY 794 | Special Topics in Musicology  (with MVP advisor approval only) | 3 | Fall, Spring |

* This option is available only to transfer students who have completed the equivalent of MCY522 or MCY525 in another institution.

B2.      *Music Theory general knowledge* requirements

The Music Theory general knowledge exam component of the DQP will be satisfied by successful completion of ONE of the following courses with a grade of B or higher. These courses must be completed with a grade of B or higher, prior to the student being able to apply for candidacy.  Ideally, students should take one of these courses in their first year.  The acceptable courses are:

| MTC 713 | Twentieth Century Idioms | 3 | Spring |
| MTC 717 | Analytical Techniques* | 3 | Fall, Spring |
| MTC711 | Theory Pedagogy | 3 | Fall |

* Prerequisite: Students must pass the Theory Entrance Exam.

B3. *Doctoral Qualifying Jury Recital*

 The Qualifying Jury Recital typically occurs at the end of the first semester of study, and may be no later than the end of the 2nd semester of study. Students must have successfully passed a Doctoral Qualifying

Jury Recital before they may schedule their first Doctoral Recital, Exams, or Oral Defense. Program notes for each piece will be submitted to the full-time voice faculty and will be orally defended at the jury recital performance.

### Doctoral Qualifying Jury Recital Requirements

The *Doctoral Qualifying Jury Recital and Oral Defense of the Qualifying Jury Program Notes* are required of all Doctoral Vocal Performance and Vocal Pedagogy and Performance students.

The Doctoral Qualifying Jury Recital must be of the standard format and consist of 30 minutes of memorized music representing five historical periods and a minimum of five languages, four of which must be English, French, German and Italian. Although not required, students are encouraged to consider including repertoire in other languages. All repertoire will be chosen in consultation with the studio voice teacher and vocal coach. The historical musical periods will be understood to be baroque, classical, romantic, early 20th century (1900-1950) and late 20th century (1950-2000) and 21st century.  The repertoire will consist of at least six (6) pieces that are learned and prepared during the first semester of doctoral study at the Frost School.  The remaining recital material may consist of previously learned repertoire.

Doctoral Qualifying Jury Recitals shall be assessed by a panel of at least three (3), full-time regular members of the MVP faculty. Panel members shall be full-time Regular or Educator faculty; or part-time Associated faculty (Adjunct, Lecturer) with approval from the Department Chair.  Recitals shall be assessed by the panel using, at least, the Frost Student Recital Evaluation Form. Additional assessment measures may be required by the Department Chair.

### B4.    *Oral Defense of the Doctoral Qualifying Jury Program Notes* (30-45 minutes)

In preparation for the Doctoral Qualifying Jury, students will write accompanying program notes.  Three weeks prior to singing the Doctoral Qualifying Jury, the student will email the program notes to the full-time, regular voice faculty.  In addition, the student will schedule an oral defense of the program notes with the Chair of the Department.  The oral defense will take place during the week before the departmental juries.  It will be taken before at least three (3) members of the full-time, regular department faculty, including the principal teacher/advisor.  The faculty members administering the exam will review the assignment and ask the student to defend the program notes and/or discuss them in further depth.

During the oral exam, committee members will ask questions to test the depth of the student's knowledge and understanding of the material presented in the qualifying jury recital and more specialized information regarding the student's specific instrument.  This might include, but is not limited to further questions regarding the previous exam material and further performance-based evaluation, including text and music inferences and conclusions.  At the end of the oral exam, students will wait outside the room while the committee reaches a decision.  Two outcomes are possible, pass or fail.

### B5. *Graduate Qualifying Recital* requirements

The Doctoral Qualifying Recital is the first of three major recitals required of all Doctoral Vocal Performance majors. (See: Department of Vocal Performance Graduate Handbook for specific recital repertoire requirements.)

B5a. The Doctoral Qualifying Recital must be of the standard format and consist of 55-60 minutes of memorized music representing four historical periods and at least four languages (English, French, German and Italian).  With approval of the full-time faculty, the recital may be a Special Topic Recital with 50-60 minutes of memorized music featuring the music of one composer, one language, one style period, etc. One week prior to the hearing, the student will email program notes to each full-time voice faculty member.

Program notes will be written for each piece programmed and the notes will be orally defended at the time of the recital hearing with the full-time voice faculty.

B5b. The Doctoral Qualifying Recital may occur any semester following the successful completion of the Doctoral Proficiency Jury Recital.

B5c. The Doctoral Qualifying Recital shall be assessed by a panel of four (4) faculty members, three of which must come from the MVP faculty, established by the candidate. Panel members shall be full-time Regular or Educator faculty, or part-time Associated faculty (Adjunct, Lecturer) with approval from the Department Chair.

Recitals shall be assessed by the panel using the Frost Student Recital Evaluation Form. The Department Chair may impose additional assessment measures.

The student will be notified of the results with an email from the Chair of the Department of Vocal Performance or Vocal Performance Program Director.

B6.  *MVP Vocal Performance Doctoral Qualifying Examination*

The MVP Doctoral Qualifying Examination will be administered by the Department of Vocal Performance once per semester. The examination will be a comprehensive, written exam covering topics that may include vocal literature, historical development of oratorio, historical development of opera performance, historical development of art song literature. The examination will be given by the Department of Vocal Performance one Saturday per semester and specific dates and test topics will be announced at the beginning of each school year.

The MVP Doctoral Qualifying Examination will result in one of three outcomes, determined by the designated MVP faculty:

- Pass
- Conditional pass—one part must be re-written
- Fail—entire written exam must be re-taken

In all cases, the student will be notified of the results by email from the Chair of the Department of Vocal Performance or the Vocal Performance Program Director.

A Conditional Pass means the student will re-write the section of the test that did not pass on the first attempt.   The student will be notified which section did not pass by the Department Chair.  The student may re-attempt the re-write one time.  Re-attempts must be scheduled the semester following the initial attempt.  Failure a second time will result in dismissal from the program.

A <u>Fail</u> will result in the student re-writing the entire exam.  The Department Chair will notify the student of the failure. The student may re-attempt the exam one time.  Re-attempts must be scheduled the semester following the initial attempt.  Failure a second time will result in dismissal from the program.

***MVP Vocal Performance Qualifying written exam*** will be given at a prescribed time and place each spring semester.  With the exception of the Doctoral Qualifying Jury Recital and Oral Defense of the Program Notes, students should plan on taking the written exam during the fourth semester of doctoral study. The written examination will be approved, administered and graded by the Department of Vocal Performance faculty.  The University of Miami Graduate Rating Rubric will be used for grading the written test.  The student must receive an average score of 3 in each category or better to pass.

1. General Knowledge of International Phonetic Alphabet (60 minutes)
   Student will be given four art songs, one each in English, Italian, German and French. The student will write an IPA translation for each text.  Student may not use any outside source for assistance in completing this section of the test.

2. General Knowledge of Poetic Lyric Translation (60 minutes)
   Excluding the English song, the student will choose two of the pieces given for IPA translation and provide a poetic, lyric translation of the text.  This translation would be appropriate for use in program notes, liner notes or book of translations.  The student may bring and use one dictionary in each language for translation assistance.  Online dictionaries may not be used.

3. Comprehensive Analysis within the Discipline (120 minutes)

   The student will choose two (2) topics from the following list:

   a. Two weeks prior to the examination date, the student will submit copies of four (4) classical vocal pieces, each in a different language, to the Chair of the Department of Vocal Performance.  Each score must be clean of any markings with the exception of measure numbers.  Each piece must have measure numbers written in the score. At the time of the test, the student will be given a copy of the two (2) chosen pieces for written discussion. The student will discuss the (1) historical context, (2) compositional style and hallmarks, (3) information about the composer, (4) musical characteristics specific to the text, and (5) performance practice, i.e. historical knowledge of style considerations and scholarly thought on performance practice specific to that historical period, and (6) pedagogical issues that might arise when performing or teaching the specific songs.

   b. Discuss the development of opera. Trace the changes and contributions during each historical period---baroque, classical, romantic and 20th century.

   c. Discuss the development of the German Lieder in the 19th century.

   d. Discuss the development of the French Mélodie during the Impressionist era.

e. Discuss the development of the English (either British or American) Art song in the 20th century.

# EXHIBIT "D"

**FROST SCHOOL OF MUSIC**
**ACADEMIC PROGRESS RECORD**
**DOCTOR OF MUSICAL ARTS – VOCAL PERFORMANCE (MVPF)**

CREDITS REQUIRED: ___60___
SEMESTER ENTERED: _____
PRINCIPAL INSTRUMENT: _____

NAME: _____    ID#: _____

| APPLIED LESSONS 12 | Date | Credit | Grade | ALLIED MUSIC COURSES 15 | Date | Credit | Grade | ENTRANCE EXAM RESULTS: |
|---|---|---|---|---|---|---|---|---|
| MVP VO7 | | 2 | | MTC 717 Analytical Tech or Other | | 3 | | MTC |
| MVP VO7 | | 2 | | Performance Seminar | | 1 | | |
| MVP VO7 | | 2 | | Performance Seminar | | 1 | | DOCTORAL COMMITTEE |
| MVP VO7 | | 2 | | MVP 738 Adv Vocal Pedagogy | | 3 | | 1. |
| MVP VO7 | | 2 | | MED 790 Teaching Music in College | | 1 | | 2. |
| MVP VO7 | | 2 | | MCY | | 3 | | 3. |
| | | | | MCY | | 3 | | 4. |
| VOCAL PERFORMANCE PREP 6 | | | | | | | | |
| MVP 652 Vocal Performance Prep | | 1 | | CREATIVE ACTIVITIES 12 | | | | QUALIFYING EXAM |
| MVP 652 Vocal Performance Prep | | 1 | | MED 702 DMA Essay Proposal | | 1 | | DATE: |
| MVP 652 Vocal Performance Prep | | 1 | | MVP 832 Doctoral Recital | | 1 | | |
| MVP 652 Vocal Performance Prep | | 1 | | MVP 832 Doctoral Recital | | 1 | | QUALIFYING RECITAL |
| MVP 652 Vocal Performance Prep | | 1 | | MVP 832 Doctoral Recital | | 1 | | DOCTORAL RECITAL |
| MVP 652 Vocal Performance Prep | | 1 | | MVP 831 Doctoral Essay | | | | DOCTORAL RECITAL |
| OPERA THEATER 3 | | | | MVP 831 Doctoral Essay | | | | DOCTORAL RECITAL |
| MVP 788 Opera Theater | | 1 | | MVP 831 Doctoral Essay | | | | APPLIED TO CANDIDACY |
| MVP 788 Opera Theater | | 1 | | COGNATE/ELECTIVES 12 | | | | DATE: |
| MVP 788 Opera Theater | | 1 | | | | | | ADMITTED TO CANDIDACY |
| APPLIED FOR GRADUATION | | | | | | | | DATE: |
| DATE: | | | | | | | | PROPOSAL DEFENSE |
| CERTIFICATE OF APPROVAL | | | | | | | | DATE: |
| DATE: | | | | | | | | FINAL DEFENSE |
| DEGREE CONFERRED | | | | | | | | DATE: |
| DATE: | | | | | | | | |

Last Modified 6.4.2018

**2**

# EXHIBIT "E"

August 2021

<div align="center">

**Doctoral Qualifying Process Procedures**
**DMA in Vocal Performance**

</div>

**Defined:** The Doctoral Qualifying Process (DQP) in Vocal Performance is an extended, rigorous process through which the accumulated lifetime knowledge, experience, and performance ability of an applicant can be determined to be adequate to pursue independent performance or research projects at a professional level.

**Components:** NASM requires that all students of the Frost School demonstrate proficiency in musicology and music theory. Programs may demand additional requirements, with approval of the Department Chair. Each program within the MVP department, in consultation with Frost MTC and MCY departments, shall determine an acceptable course of action regarding how these criteria may be satisfied.

**Timing:** All components of the DQP must be successfully completed before applying for Doctoral Committee Approval and before defense of the Proposal of the Final Project. The qualifying coursework in musicology and music theory must be completed with a passing grade (of B or higher) as seen on a transcript, before the student can apply for candidacy. This means this coursework should be taken within the first three semesters of the DMA in Vocal Performance.

## DOCTOR OF MUSICAL ARTS in VOCAL PERFORMANCE

The DQP (Doctoral Qualifying Process) for the Doctor of Musical Arts in Vocal Performance will be comprised of the following components:

1. Doctoral Qualifying Jury/Defense of Doctoral Qualifying Jury Program Notes
2. Doctoral Qualifying Recital
3. MVP Doctoral Qualifying Written Examination
4. Completion of Required MCY and MTC Coursework

No part of the DQP may be taken before the 2nd semester of full-time study, with the exception of the required MCY and MCT courses, and the DoctoralQualifying Jury/Defense of the Doctoral Qualifying Jury Program Notes, which will be scheduled during the MVP Jury time at the end of the first semester. The Doctoral Qualifying Written Examination is administered in the spring semester by the Department of Vocal Performance.

**Good standing:** All students shall be matriculated and remain in current good standing with the Frost School throughout all components of the DQP.  Good standing is defined as maintaining a cumulative GPA of 3.0. Should the student fail to remain in good standing, any components either completed or in progress may not be counted towards the DQP.

**DQP Requirements for DMA Vocal Performance majors**

1. Doctoral Qualifying Jury/ Defense of the Doctoral Qualifying Jury Program Notes
   a. Can be completed during 1st semester of study or no later than 2nd semester of study.
   b. Must be satisfactorily completed *before* scheduling the Doctoral Qualifying Recital.
   c. Students are allowed to reattempt once, no earlier than the semester following the initial attempt. Failure a second time will result in dismissal from the program.
   d. Program notes will be submitted and orally defended at the time of the Qualifying Jury.

2. Doctoral Qualifying Recital (55-60 minutes)
   a. No earlier than 2nd semester of study
   b. Must be satisfactorily completed *before* scheduling the other required Doctoral degree recitals
   c. Students are allowed to reattempt once, no earlier than the semester following the initial attempt. Failure a second time will result in the dismissal from the program.

3. MVP Doctoral Qualifying Written Exam
   a. No earlier than 3rd semester of study
   b. Administered by the department each spring semester
   c. Students are allowed to reattempt once, no earlier than the semester following the initial attempt. Failure a second time will result in dismissal from the program.

4. Completion of Required MCY and MTC Coursework
   (Please see the approved classes for each area below)
   a. Recommended in the first year of study
   b. Must pass with a grade of B or higher
   c. Must complete before the Vocal Performance Qualifying Written Exam

**Recommended Schedule**

| | | |
|---|---|---|
| Year 1 | -Approved DQP coursework<br>-Doctoral Qualifying Jury Recital<br>-Oral Defense of Qualifying Jury Program Notes | -Approved DQP coursework<br>-Doctoral Qualifying Recital |
| Year 2 | -Approved DQP coursework (If not completed earlier) | -MVP Doctoral Qualifying Written Exam<br>- Doctoral Final Project (lecture recital and Research Paper) Proposal Defense (standard track) |
| Year 3 | -Doctoral Final Project (lecture recital and Research Paper) Proposal Defense (fall option) | -Doctoral Final Project (lecture recital and Research Paper) Presentation and Final Defense of Final Project Research Paper. |

DQP Component Requirements

***Musicology general knowledge*** *requirements*

The Musicology general knowledge exam component of the DQP will be satisfied by successful completion of ONE of the following courses with a grade of B or higher. Ideally, students should take one of these courses in their first year.  The acceptable courses are:

| MCY 622 | Operatic Literature | 3 | Spring, offered yearly |
| MCY 625 | Art Song Literature | 3 | Spring, offered yearly |
| MCY 683 | History of the American Musical Theatre | 3 | Fall, offered yearly |
| MCY 794 | Special Topics in Musicology  (with MVP advisor approval only) | 3 | Fall, Spring |

***Music Theory general knowledge*** *requirements*

The Music Theory general knowledge exam component of the DQP will be satisfied by successful completion of ONE of the following courses with a grade of B or higher. Ideally, students should take one of these courses in their first year.  The acceptable courses are:

| MTC 713 | Twentieth Century Idioms | 3 | Spring |
| MTC 717 | Analytical Techniques | 3 | Fall, Spring |
| MTC 711 | Theory Pedagogy | 3 | Fall |
| MTC 621 | Multimedia for Musicians | 3 | Fall, Spring |

***Doctoral Qualifying Jury and Oral Defense of the Doctoral Qualifying Jury Program Notes Requirements***

The *Doctoral Qualifying Jury Recital and Oral Defense of the Qualifying Jury Program Notes* are required of all Doctor of Vocal Performance students. The Doctoral Qualifying Jury represents an important milestone in the degree program as It allows faculty to assess the student's potential for success within later components of the degree.

The Qualifying Jury typically occurs at the end of the first semester of study, and may be no later than the end of the 2nd semester of study. Students must have successfully passed the Doctoral Qualifying Jury and the Defense of the Doctoral Qualifying Jury Program Notes before they can schedule their Doctoral Qualifying Recital or Doctoral Qualifying Written Exam.

The Doctoral Qualifying Jury must be of the standard format and consist of 30 minutes of memorized music representing four historical periods and a minimum of four languages, which must be English, French, German, and Italian. Although not required, students are encouraged to consider including repertoire in other languages. All repertoire will be chosen in consultation with the studio voice teacher and vocal coach. The historical musical periods will be understood to be baroque, classical, romantic, impressionistic, early 20th century (1900-1950) and late 20th century (1950-2000) and 21st century. The repertoire will consist of at least six (6) pieces that are learned and prepared during the semester of the Doctoral Qualifying Jury.  The remaining jury material may consist of previously learned repertoire.

The Doctoral Qualifying Jury and Oral Defense of the Doctoral Qualifying Jury Program Notes shall be assessed by a panel of at least three (3), full-time regular members of the MVP faculty. Panel members shall be full-time Regular or Educator Faculty, or part-time Associated Faculty (Lecturer, Adjunct) with approval from the Department Chair. Recitals shall be assessed by the panel using, at least, the Frost Student Recital Evaluation Form. Additional assessment measures may be required by the Department Chair.

In preparation for the Doctoral Qualifying Jury, students will write accompanying program notes for all pieces presented without the guidance of faculty or the assigned MVP Program Notes TA.

One (1) week prior to singing the Doctoral Qualifying Jury, the student will email the program notes to the voice faculty. The oral defense will take place at the time of the Doctoral Qualifying Jury. The faculty members administering the exam will review the assignment and ask the student to defend the program notes and/or discuss them in further depth.

During the defense, committee members will ask questions to test the depth of the student's knowledge and understanding of the material presented in the Qualifying Jury, and more specialized information regarding the student's specific instrument. This might include, but is not limited to, further questions regarding the exam material and further performance-based evaluation, including text and music inferences and conclusions. At the end of the Doctoral Qualifying Jury and Defense of the Qualifying Jury Program Notes, students will wait outside the room while the committee reaches a decision.  Two (2) outcomes are possible, pass or fail. If the student fails the Qualifying Jury and/or Qualifying Jury Program Notes Defense, they may attempt one (1) additional time the following semester. If the student fails a second time, they will be dismissed from the program.

### Doctoral Qualifying Recital Requirements

The Doctoral Qualifying Recital is the first of three major recitals required of all Doctoral Vocal Performance majors. (See: Department of Vocal Performance Graduate Handbook for specific recital repertoire requirements.)

The Doctoral Qualifying Recital must be of the traditional format and consist of 55-60 minutes of memorized music representing four historical periods and at least four languages (English, French, German and Italian). A Recital Hearing is mandatory two (2) weeks before the performance date. In general, MVP recital hearings are scheduled for Fridays and are held in PLF 121N. The individual studio voice teacher is responsible for notifying the chair and the chair will place the hearing date on the department calendar and invite the appropriate required faculty. A faculty panel of three (3), including the supervising teacher and coach, are required to be present. Two (2) weeks prior to the hearing, the student will email program notes to each full-time voice faculty member.

Program notes will be written for each piece programmed and the notes will be orally defended at the time of the recital hearing with the full-time voice faculty. During the defense, committee members will ask questions to test the depth of the student's knowledge and understanding of the material presented in the hearing, and more specialized information regarding the student's specific instrument. This might include, but is not limited to further questions regarding the exam material and further performance-based evaluation, including text and music inferences and conclusions.

The Doctoral Qualifying Recital may occur any semester following the successful completion of the Doctoral Qualifying Jury and Defense of the Doctoral Qualifying Jury Program Notes.

The Doctoral Qualifying Recital shall be assessed by a panel of four (4) faculty members, three of which must come from the MVP faculty, established by the candidate. Panel members shall be full-time Regular or Educator faculty, or part-time Associated faculty (Adjunct, Lecturer) with approval from theDepartment Chair.

Recitals shall be assessed by the panel using the Frost School Graduate Recital Evaluation. The Department Chair may impose additional assessment measures. The student will be notified of the results with an email from the Chair of the Department of Vocal Performance or Vocal Performance Program Director. Two (2) outcomes are possible, pass or fail. If the student fails the Qualifying Recital, they may attempt one (1) additional time the following semester. If the student fails a second time, they will be dismissed from the program.

### MVP Vocal Performance Doctoral Qualifying Written Exam

MVP Vocal *Performance Qualifying Written Exam* will be given at a prescribed time and place each spring semester. Students should plan on taking the written exam during the fourth semester of doctoral study. The written examination will be approved and graded by a minimum of three (3) Department of Vocal Performance faculty.

The examination will consist of the following three (3) sections. The first section will cover the general knowledge of IPA. The second section the general knowledge of poetic lyric translations. The third section will test student's comprehensive analysis within the discipline. The student will be allotted four (4) hours for the exam and should expect to use the entire time. Preparation for the exam is significant and may take several months. The examination will be offered one Saturday per spring semester and specific dates and test topics will be announced at the beginning of each school year.

1.  *General Knowledge of International Phonetic Alphabet (60 minutes)*
    Student will be given four art songs, one each in English, Italian, German and French. The student will write an IPA translation for each text. Student may not use any outside source for assistance in completing this section of the test.

2.  *General Knowledge of Poetic Lyric Translation (60 minutes)*
    Excluding the English song, the student will choose two of the pieces given for IPA translation and provide a poetic, lyric English translation of the text. This translation should be appropriate for use in program notes, liner notes, or book of translations. The student may bring and use one dictionary in each language for translation assistance. Online dictionaries may not be used.

3.  *Comprehensive Analysis within the Discipline (120 minutes)*
    The student will choose **two** (2) topics from the following list:

    a.  Two weeks prior to the examination date, the student will submit copies of four (4) classical vocal pieces, each in a different language, to the Chair of the Department of Vocal Performance. Each score must be clean of any markings with the exception of measure numbers. Each piece must have measure numbers written in the score. At the time of the test, the student will be given a copy of two (2) chosen pieces for written discussion. The student will discuss the (1) historical context, (2) compositional style and hallmarks, (3) information about the composer, (4) musical characteristics specific to the text, and (5) performance practice, i.e. historical knowledge of style considerations and scholarly thought on performance practice specific to that historical period, and (6) pedagogical issues that might arise when performing or teaching the specific songs.

    b.  Discuss the development of opera. Trace the changes and contributions during each historical period---baroque, classical, romantic, 20th century, and 21st Century.

    c.  Discuss the development of the German Lied in the 19th century.

    d.  Discuss the development of the French Mélodie during the Impressionist era.

    e.  Discuss the development of the English (either British or American) Art song in the 20th century.

The Doctoral Qualifying Exam will result in one of three outcomes, determined by the designated MVP faculty:

• Pass
• Conditional pass—one part must be re-written
• Fail—entire written exam must be re-taken

In all cases, the student will be notified of the results with an email from the Chair of the Department of Vocal Performance or Vocal Performance Program Director within two (2) weeks.

A <u>Conditional Pass</u> means the student will re-write the section of the test they did not pass on the first attempt. The student will be notified which section they did not pass by the Department Chair. The student may re-attempt the re-write one time. Re-attempts must be scheduled the semester following the initial attempt. Failure a second time will result in dismissal from the program.

A <u>Fail</u> will result in the student re-writing the entire exam. The Department Chair will notify the student of the failure. The student may re-attempt the exam one time. Re-attempts must be

scheduled the semester following the initial attempt. Failure a second time will result in dismissal from the program.

# EXHIBIT "F"

Dear Dr. Ragsdale,

I am writing to appeal the decision of the Doctoral Qualifying Jury based on the MVP Doctoral Qualifying Process policy and what felt like a lack of support from certain members of the MVP faculty.

After reviewing the policy for the Department of Vocal Performance Doctoral Qualifying Process in depth I wanted to bring to your attention something that was not within policy during either of my attempts at step 1 of the process: The Doctoral Qualifying Jury that I sang last Spring and this Fall.

On the bottom of page 4 under section B3 titled: *Doctoral Qualifying Jury Recital,* the policy describes the requirements for what is to be sung on the jury, and how the singing will be assessed using the Frost Recital Rubric where you are given a certain number for a score. However, this scoring process is simply an assessment to give you an idea as to what level you're at and whether the areas outlined in the rubric "Needs Improvement," or "Exceeds Requirements." But you cannot pass or fail the jury based on the singing.

The only portion of the qualifying jury that you can pass or fail is found in the following section B4: *Oral Defense of the Doctoral Qualifying Jury Program Notes (30-45 minutes).* There, it states that after the oral defense, a deliberation happens within the committee and two outcomes are possible: Pass or Fail. As a matter of fact, according to the policy, the two portions of the jury, that is, the oral defense of the program notes and the singing of the repertoire are not even supposed to occur at the same time. The defense is supposed to happen a week before the singing takes place, and thus the student should know whether they have "passed" or "failed" their oral defense before they even sing before the faculty panel, according to what it says.

This concept is reinforced again in step 2 of the Doctoral Qualifying Process, in the section that follows under B5: *Graduate Qualifying Recital Requirements.* While the policy outlines the requirements of the qualifying recital, similarly to the qualifying jury in B3, there is no option to pass or fail, but simply to receive a formal rating of assessment from the chair of the department. Then, in the last section B6: *MVP Vocal Performance Doctoral Qualifying Examination,* students can pass or fail the written exam, but no singing is involved in this process. So, according to the policy, only the written exam and oral exam components of the doctoral qualifying process can be passed and/or failed, but the singing portions cannot.

I have attached the policy, the emails from you and Professor Buchman indicating emphatically that the Program Notes/Oral Defense had no bearing on the jury from Spring 2021, the most recent decision letter from this Fall 2021, and the rubric for which the singing is scored.

Please review the following attachments and let me know if based on your observations, the decision not to pass my jury in can be appealed based on the policy, as for the last year and a half, the voice faculty have repeatedly failed me on no grounds outlined in their own policy. Also, one thing that was unsettling to me last Spring and this Fall in particular that my effort to reach out to faculty members regarding areas that were brought to my attention that the faculty felt needed improvement and received no response from them. For example, last year you

suggested I reach out to both Professors Johnson and Buchman to review my program notes to ensure that my scholarly writing was at the highest level because it was an area of concern that was brought up at the end of Fall 2020 despite having my program notes reviewed by you. However, after numerous attempts of contacting professor Johnson, I received no response. Similarly, this year Dr. Moore suggested I sing in both Professor's Lopez-Neil and Thompson's studio class stating the more you perform, the better you perform. However, similarly to last year, I received no reply from professor Thompson with the opportunity to sing in her studio class.

What I found interesting about this is that in both semesters, the teachers whose ratings were among the lowest scores I was given were the very professors that did not respond to the inquiry that was suggested by their own faculty colleague. This was confusing to me because I was always taught that if you aren't a part of the solution, you are part of the problem.

On my end, I really value hard work and rigorous practice. If only two voice forums were required, once we were permitted to do so, I sang in 5 this past semester, believing as you stated, the more you do it the better you do it. Since Dr. Moore does not have a studio class as an adjunct, I sang in Professor Lopez-Neil's. Before every performance, including the jury, I went to the space I would be singing in the day before, to get a feel for the space by singing my pieces in the venue, because sometimes the sound you get back in different places varies, which is why we work so hard never to listen to ourselves when we sing. Additionally, I worked this semester to sing with a lighter timbre as opposed to driving the sound unnecessarily. I did this to show the faculty that I am serious about the DMA program here and want them to know that I am working hard to improve the areas that they have expressed are a concern to them. I had **no** other goal last semester than to pass my jury with every fiber of my being!

This past semester, I was very delighted to have been featured on the November 23, 2021 edition of the weekly UM Communication's: News @ The U. I have attached that email to this message. If you scroll to the very bottom under the "Seen at The U," section, you will see a captioned photo of Leah Torres and I performing our scene from this Fall's performance of "Frost Opera Theatre Presents: Opera Scenes," on November 17th & 18th. In this scene, I have just asked my love interest to be my wife, we then embrace and express our love for one another for all eternity. I share this to show that underneath what has become a very convoluted situation surrounding the DQJ and concerns I've had feeling visibly treated differently from everyone else, what we are afforded the privilege of getting to do as students at the Frost School of Music is make beautiful performance art to share with our audiences with passionate artistry and musical sensitivity. I would very much like to continue my studies as a doctoral student at the Frost School of Music (FSOM) however, not at the expense of a lack of support from some of the voice faculty and unequal treatment. To experience this is exhausting because while everyone else has the luxury of just getting to study their craft and make improvements under the guidance of their teacher, I bear the burden of having to *try* do the same thing, while being visibly treated differently than everyone else, and constantly train under the unimaginably stressful threat of being dismissed from the program for reasons that are not even within university and departmental policies.

I've included the messages here with both voice teachers suggesting I connect with other professors so that by every means possible, I can meet their expectations since the decision is made by all teachers, not just your own, and the lack of correspondence both times, as well as the lowest ratings they provided both times.

Please let me know if you have any feedback regarding these areas.

Thank you so much for your time and consideration and I hope to hear back from you.

Sincerely,
Tim

# EXHIBIT "G"

## RE: Further Review of Policy

de l'Etoile, Shannon Kay, Ph.D. <sdel@miami.edu>

Thu 1/20/2022 2:55 PM

To: Oliver, Timothy <txo173@miami.edu>; Prado, Willy, Ph.D. <GPrado@med.miami.edu>

Cc: Pacheco, Jessica N <jessica.pacheco@miami.edu>; Ragsdale, Frank W <f.ragsdale@umiami.edu>; Santana, Manuel A <msantana@miami.edu>

Dear Tim,

Many thanks for your email.  The newer document attached here was posted to our Graduate Studies website in December 2021.  The information was not emailed or distributed to any students, because it is always available on the website.

Note that no parts of the policy were changed.  Rather, the MVP faculty revised the wording of the document in an effort to make the policy more clear.

Best wishes,

**Shannon K. de l'Etoile, Ph.D., MT-BC**
Associate Dean of Graduate Studies
Professor, Music Therapy



P.O. Box 248165 Coral Gables, FL 33124
305.284.6913
sdel@miami.edu

**www.frost.miami.edu**



**From:** Oliver, Timothy <txo173@miami.edu>
**Sent:** Thursday, January 20, 2022 11:17 AM
**To:** de l'Etoile, Shannon Kay, Ph.D. <sdel@miami.edu>; Prado, Willy, Ph.D. <GPrado@med.miami.edu>
**Cc:** Pacheco, Jessica N <jessica.pacheco@miami.edu>; Ragsdale, Frank W <f.ragsdale@umiami.edu>; Santana, Manuel A <msantana@miami.edu>
**Subject:** Re: Further Review of Policy

Hi Dean de l'Etoile,

I wanted to confirm receipt of your email containing the dates and instructions for appeals. However, I've noticed that the policy contained in your hyperlink discussing information on passing and failing the jury is very different from the one I was originally given. I've never seen this policy before. Do you know when this new Department of Vocal Performance Policy, dated August 2021 instead of 2016 was sent out? I know I was left off the MVP listserv this semester, but I never received notification of the updated policy contained in your letter. I've attached both here so you can refer to what I'm talking about. Any information you're able to provide would be very helpful.

Sincerely,

Tim

---

**From:** de l'Etoile, Shannon Kay, Ph.D. <sdel@miami.edu>
**Sent:** Thursday, January 20, 2022 9:48 AM
**To:** Oliver, Timothy <txo173@miami.edu>; Prado, Willy, Ph.D. <GPrado@med.miami.edu>
**Cc:** Pacheco, Jessica N <jessica.pacheco@miami.edu>; Ragsdale, Frank W <f.ragsdale@umiami.edu>; Santana, Manuel A <msantana@miami.edu>
**Subject:** RE: Further Review of Policy

Dear Tim,

My apologies – the letter I sent to you earlier today contained an incorrect date for submission of an appeal request.  Please see this revised letter for the correct date.

Best wishes,

**Shannon K. de l'Etoile, Ph.D., MT-BC**
Associate Dean of Graduate Studies
Professor, Music Therapy



P.O. Box 248165 Coral Gables, FL 33124
305.284.6913
sdel@miami.edu

**www.frost.miami.edu**

    

---

**From:** de l'Etoile, Shannon Kay, Ph.D.
**Sent:** Thursday, January 20, 2022 9:01 AM
**To:** Oliver, Timothy <txo173@miami.edu>; Prado, Willy, Ph.D. <GPrado@med.miami.edu>

# EXHIBIT "H"

February 28, 2022

Dean Guillermo Prado
The Graduate School
235 Ashe Administration Building
1252 Memorial Drive
Coral Gables, FL 33146

Dear Dr. Prado,

My name is Timothy Oliver. I am a second-year Doctoral student in Music Performance at the University of Miami Frost School of Music, and I am writing you regarding a final grade issue that I have been unable to resolve with the Frost Department of Vocal Performance.

**<u>Doctoral Qualifying Jury</u>**

On September 28, 2020, I met with Dr. Ragsdale, Chair of the Department of Vocal Performance regarding the Doctoral Qualifying Process at the Frost School of Music. Following our meeting, I was given the policy for the Doctoral Qualifying Process via email. In his message, Dr. Ragsdale apologized for sounding confused in our meeting and stated that the policy was new to him.  Per the policy I was given, I am required to sing a Doctoral Qualifying Jury, which is 30 minutes of classical music repertoire before the Department of Vocal Performance faculty panel, and pass the Oral Defense of written program notes for each of the pieces I sing. The policy states that two attempts at the Doctoral Qualifying Jury are allowed. On Wednesday May 5, 2021, I performed my Jury before the Voice faculty. The following day, I was notified by Dr. Ragsdale, that the faculty voted not to pass my Qualifying Jury and to feel free to follow up with them if I had any questions regarding their decision. In response, I wrote to Voice Professor Jeffrey Buchman, who reviewed and edited the program notes I wrote prior to me sending them to the faculty. Professor Buchman replied to my email stating that the program notes had nothing to do with the faculty's decision not to pass my jury, but the decision was solely based on the singing. He copied Dr. Ragsdale, Chair of the Vocal Performance department, and Dr. de l'Etoile, Associate Dean of Graduate Studies in this message. Dr. Ragsdale wrote me the following day, May 6, 2021, also stating that the Program Notes had nothing to do with the decision not to pass my Qualifying Jury, but that the decision was solely based on the singing.

On December 10, 2021, I performed the one reattempt at the Doctoral Qualifying Jury that is allowed based on the policy. Like the previous semester, I submitted the written program notes to the Vocal Performance faculty one week prior to the day of my jury. Following the singing of my repertoire, I orally defended the program notes submitted to the faculty. After the oral defense was complete, I was asked to wait outside the room while the faculty deliberated. When the Voice Faculty finished deliberating, they invited me back into the room and informed me that once again, I did not pass the Doctoral Qualifying Jury. The following day, I was given a decision letter via

my personal Gmail address by Dr. Ragsdale, stating that the faculty chose not to pass my jury based on the level of my singing.

On January 19, 2022, I wrote Dr. Ragsdale a letter requesting to appeal the decision of the faculty based on a violation of policy and a lack of support from the Voice Faculty in preparing for my jury in Spring 2021 and Fall 2021. I stated that on the bottom of page 4 under section B3 titled: "Doctoral Qualifying Jury Recital," the policy describes the requirements for what is to be sung on the jury, and how the singing will be assessed using the Frost Recital Rubric where you are given a certain number for a score. However, this scoring process is simply an assessment to give you an idea as to what level you're at and whether the areas outlined in the rubric "Needs Improvement," or "Exceeds Requirements." But you cannot pass or fail the jury based on the singing. The only portion of the qualifying jury that you can pass, or fail is found in the following section B4: Oral Defense of the Doctoral Qualifying Jury Program Notes (30-45 minutes). There, it states that after the oral defense, a deliberation happens within the committee and two outcomes are possible: Pass or Fail. As a matter of fact, according to the policy, the two portions of the jury, that is, the oral defense of the program notes and the singing of the repertoire are not even supposed to occur at the same time. The defense is supposed to happen a week before the singing takes place, and thus the student should know whether they have "passed" or "failed" their oral defense before they even sing before the faculty panel, according to what it says. This concept is reinforced again in step 2 of the Doctoral Qualifying Process, in the section that follows under B5: Graduate Qualifying Recital Requirements. While the policy outlines the requirements of the qualifying recital, similarly to the qualifying jury in B3, there is no option to pass or fail, but simply to receive a formal rating of assessment from the chair of the department. Then, in the last section B6: MVP Vocal Performance Doctoral Qualifying Examination, students can pass or fail the written exam, but no singing is involved in this process. So, according to the policy, only the written exam and oral exam components of the doctoral qualifying process can be passed and/or failed, but the singing portions of the qualifying process cannot.

Then, the following day after I wrote this message to Dr. Ragsdale, I received an official letter of dismissal from Dean de l'Etoile. The letter contained a hyperlink that when clicked on, pulls up the Department of Vocal Performance Doctoral Qualifying Process policy. However, the policy had been changed to read that if either component of the Doctoral Qualifying Jury was not passed, whether singing or Oral Defense of program notes, then the jury will not be passed. Additionally, repertoire requirements for recitals were changed as well. I replied to Dean de l'Etoile stating that the link to the policy in her letter of dismissal contained a different policy than the one I was given in Fall 2020, and just so happen to change exactly what I communicated to Dr. Ragsdale just one day prior. She responded to me by stating that the document, which is dated August, 2021 had been changed in December 2021.

I am requesting the that the "fail" grade be changed to a "pass" grade because per the policy I was given, as well as the written feedback I received from the Vocal Performance faculty, I passed the Oral Defense, which is the only portion of the Doctoral Qualifying Jury that can yield a passing or failing grade.

## MTC 717: Analytical Techniques

In the Fall 2020 semester, I took the class "MTC 717: Analytical Techniques," to fulfill the Music Theory course requirement for my degree. I passed the class with a B-. On January 21, 2021, I wrote to Manuel Santana, the Manager of Graduate Programs and Dr. de l'Etoile, Associate Dean of Graduate Studies asking if a class with the final grade of a B- needs to be repeated based on the Good Standing policy with the Frost School of Music. They both wrote back stating that as long as a class is passed with a C or higher, it does not need to be repeated. Therefore, I did not register to take the class again and pass with a higher grade for the Spring 2021 semester. Then, on February 19, 2021, well after the last day to drop or add a class deadline ended, Dr. Ragsdale met with me via Zoom informing me that per the Doctoral Qualifying Process policy, all students undergoing the qualifying process are required to pass the Music Theory portion and Music History portion of the qualifying exam by receiving the grade of a B or higher in a Music Theory course, and a Music History course, to show their grasp on both subjects by receiving a grade that is in good standing. Therefore, I would need to pass theory with a B or higher the following semester. Consequently, I registered for MTC 717: Analytical Techniques again, and passed with an A in the Fall 2021 semester. However, after writing Dr. Ragsdale on January 19, 2022, regarding the noticeable violations to the policy I saw regarding my Doctoral Qualifying Jury evaluation, he highlighted the portion of the policy that states that if any grade falls below a B, no part of the doctoral qualifying process will be counted, and thus denied my appeal at the departmental level. However, at the second attempt of the Doctoral Qualifying Jury on December 10, 2021, the Music Theory component of the Doctoral Qualifying process was fully remediated with the grade of an A (94%). Additionally, I did not retake the theory course in the Spring 2021 semester based on the direct advice from the Manager and Associate Dean of Graduate Studies.

## "MVP VO7" Final Grade Spring 2021 and Fall 2021

Each semester I am required to register for the class MVP VO7: Voice Lessons. In the weekly private voice lessons, the student works individually with an assigned member of the Department of Voice Faculty for one hour each week to prepare the repertoire that will be performed at the jury to ensure adequate preparation. Per the syllabus for MVP VO7, 33.3% of the grade final grade of the class is the jury that takes place at the end of the semester. The remaining 66.6% is the lesson grade that takes place in the weekly private music lessons leading up to the jury performed before the voice faculty panel during finals week. In the Spring 2021 semester, I received a B- in MVP VO7 due to what was evaluated as a non-passing grade in the jury. Then, in the Fall 2021 semester I was given a grade of C in MVP VO7, once again, due to the results of the final jury.

I am requesting the two MVP VO7 grades be appealed to a B or higher since the grades in both classes were due to the non-passing jury grade. However, since according to the policy, I never actually once failed the jury, I should not have received a grade lower than a B in the class either semester because I passed both attempts which adds 33.3% back to my final grade per the syllabus.

**Graduate Qualifying Recital**

Once the Oral Defense of the Program Notes is successfully passed, the next step in the Doctoral Qualifying Process is the Graduate Qualifying Recital. In the policy I was given on September 28, 2020, the requirements for what students are allowed to sing found on section B5 state that a special topic recital is allowed, where students may perform the music of one composer in one language, instead of the standard recital which requires four languages and multiple composers. On Thursday January 27, 2022, I spoke with my assigned voice professor, Dr. Stephanie Moore about recital repertoire for the Graduate Qualifying Recital portion of the Doctoral Qualifying Process. I asked if I could do the option of a special topic instead of a standard recital. She suggested I reach out to Dr. Ragsdale, Chair of Vocal Performance to get approval. After reaching out to Dr. Ragsdale, he informed me that the policy states that a Special Topic is not allowed for Doctoral Vocal Performance majors, but only for Vocal Performance & Pedagogy majors. He then copied and pasted the part of the new policy that states that. However, he was referring to the policy that the Vocal Performance Faculty changed the day after I pointed out the policy violations that took place in the evaluation of my Qualifying Jury, which no longer shows says that Performance only majors have this option. On September 28, 2020, I was given the policies for both Performance only majors and Performance and Pedagogy majors. In both documents, the Special Topic recital is permitted for both majors.

I am requesting to appeal the denial of my desire to do a special topic recital because the original policies given to me in Fall 2020 for Doctor of Musical Arts Students in Vocal Performance, as well as Vocal Performance and Pedagogy state that this option is allowed, and was approved for another student.

**Conclusion**

In conclusion, since I passed the Spring 2021 and Fall 2021 Program Notes Oral Defense portions of the Doctoral Qualifying Jury, the only component of the policy that yields a passing or failing grade, I am requesting the grade be changed from "fail" to "pass," because that is what the policy states, and by December 10, 2021, my Music Theory grade was in good standing. Secondly, since both attempts at the qualifying jury were failed on grounds that were not even within policy, I am requesting my grades in MVP VO7 be changed to the grade of B or higher because the jury counts for 33.3% of the grade according to the syllabus. Finally, it is not ethical to change a policy for a graduate doctoral qualifying process one day after several violations were pointed out and make it effective immediately with no disclaimer on the policy that says the faculty reserve the right to make changes to the policy at any time. It is simply covering up unethical grading that was done. Therefore, I am requesting approval to do a special topic recital for the next phase of the Doctoral Qualifying Process: The Graduate Qualifying Recital this Spring 2022 semester. Additionally, the Graduate Qualifying Recital should not be evaluated using by a pass or fail grade, according to the original policy. Any changes to the policy should not be effective until Fall 2022, since this academic year was well underway when the policy changed one day after I highlighted numerous inconsistencies. Thank you so much for your time and consideration.

Sincerely,

Timothy Oliver
Doctoral Student in Vocal Performance
University of Miami
Frost School of Music
txo173@miami.edu

**Explanation of Attachments:**

-Email from Dr. Ragsdale, Chair of the Department with Doctoral Qualifying Process documents where he stated he was confused about his own department's process

-DMA Recitals- original Doctoral Qualifying Process policy for Vocal Performance dated October 2016

-Original Doctoral Qualifying Process policy for Vocal Performance & Pedagogy, dated August 2016, showing the repertoire requirements for the Graduate Qualifying Recital to be exactly the same as the requirements for performance only, non-pedagogy majors.

-Revised Doctoral Qualifying Process policy dated August 2021

-Email from Professor Buchman stating the Program Notes, which is the pass/fail portion of the Doctoral Qualifying Jury had nothing to do with the decision not to pass me, as the policy states, in Spring 2021 with Dr. de l'Etoile, Dean of Graduate Studies and Dr. Ragsdale, Chair of Voice copied in the message

-Email from Dr. Ragsdale, Chair of Voice, stating that the Program notes did not weigh into the decision not to pass my Spring 2021 jury

-Decision letter from Dr. Ragsdale sent to my Gmail account stating that I did not pass based on the *singing* portion of my jury, not the Oral Defense of Program notes in Fall 2021 attempt

-Email of Letter of appeal to Dr. Ragsdale on behalf of the Department of Vocal Performance Faculty based on policy violation

-Email Letter of appeal to Dr. Ragsdale on behalf of the Department of Vocal Performance not to pass me based on lack of support from faculty

-Letter of Dismissal from Dean de l'Etoile with hyperlink containing a new policy which changed exactly what I expressed to Dr. Ragsdale, as well as changes to repertoire requirements for recitals just one day later

-Syllabus for MVP VO7 stating breakdown of final grade determination: Weekly lesson and Jury

-Message from Manny Santana, manager of Graduate Programs and Dr. de l'Etoile, Associate Dean of Graduate Studies stating a class with a C or higher does not have to be taken again.

-Link and pass code to recorded Zoom video, provided to me by Dr. Ragsdale, who records weekly private music lessons and sends them to us students so we can see the areas we need to improve, which contains him stating I would need to pass Music Theory with a B or higher to pass the Music Theory portion of the Doctoral Qualifying Process on February 19, 2021, after Dean de l'Etoile said I didn't have to: ***(This section occurs from 34:45-36:15)***

https://miami.zoom.us/rec/share/6s3nRTAV1YrXscwNp5QOi6qNoU_pKfttxBupW6GLMO5Aq75UJAOK1Z i6ReGheDgE.HJH33l70aXRnFRl6 Passcode: 0QB62.nT

-Email from Dr. Ragsdale saying I am not permitted to do a special topic recital for the Graduate Qualifying Recital, should I pass the jury per the policy that he changed in January 2022, after the Spring 2022 semester had already started.

# EXHIBIT "I"



**UNIVERSITY OF MIAMI**

**Guillermo Prado, PhD**
Vice Provost, Faculty Affairs
Dean, Graduate School
Professor of Nursing and Health
Studies, Public Health Sciences
and Psychology

Ashe Administration Building
1252 Memorial Drive, Suite 240
Coral Gables, FL 33124
(305) 284-2002
gprado@miami.edu

Timothy Oliver
6650 SW 57th Avenue
Apt. C409
South Miami, FL 33143
513-371-1249
txo173@miami.edu

Dear Mr. Oliver,

I have had the opportunity to thoroughly review the documentation in connection with your grievance appeal letter dated February 28, 2022.  As a result of my review, I am going to partially grant your appeal on the basis that you were not given the opportunity to defend your Doctoral Qualifying Jury Program Notes as stated in the Doctoral Qualifying Process Procedures. Accordingly, the other points in your letter will not be considered any further.

I am going to ask the Frost School of Music (FSOM) to allow you to defend your Doctoral Qualifying Jury Program Notes.  Please schedule this oral defense with the Chair of the Department as soon as possible at a mutually convenient time for you and your evaluators. After the oral defense has taken place, you will be given the opportunity to retake the Doctoral Qualifying Jury Recital. This recital shall take place no later than May 11th, 2022.

I have already communicated my decision to Associate Dean de l'Etoile. Please contact her so that you can be guided on the next steps.

Wishing you the best on these next steps.

Sincerely,

Guillermo Prado, Ph.D.
Dean, University of Miami Graduate School

cc:   Associate Dean Shannon de l'Etoile, Frost School of Music
       Associate Dean Patricia Abril, Graduate School
       Faculty Senate Chair

# EXHIBIT "J"

**Doctoral Qualifying Process Procedures**
**Department of Vocal Performance**

**Defined:** The Doctoral Qualifying Process (DQP) in Vocal Performance is an extended, rigorous process through which the accumulated lifetime knowledge, experience, and performance ability of an applicant can be determined to be adequate to pursue independent performance or research projects at a professional level.

**Components:** NASM requires that all students of the Frost School demonstrate proficiency in musicology and music theory. Programs may demand additional requirements, with approval of the Department Chair. Each program within the MVP department, in consultation with Frost MTC and MCY departments, shall determine an acceptable course of action regarding how these criteria may be satisfied.

**Timing:** All components of the DQP must be successfully completed before a student can apply for and be granted Doctoral Candidacy status.  The qualifying coursework in musicology and music theory must be completed with a passing grade as seen on a transcript, before the student can apply for candidacy.  This means this coursework should be taken within the first three semesters of the DMA in Vocal Performance.

**DOCTOR OF MUSICAL ARTS in VOCAL PERFORMANCE**

A1. The DQP (Doctoral Qualifying Process) for the Doctor of Musical Arts in Vocal Performance will be comprised of the following components:

1. Doctoral Qualifying Jury Recital
2. Doctoral Qualifying Recital
3. MVP Doctoral Qualifying Examination

A2. No part of the DQP may be taken before the 3rd semester of study, with the exception of the Doctoral Qualifying Jury Recital, which will be scheduled during the MVP Jury time at the end of the first semester. The Doctoral Qualifying Examination exam is administered once per semester by the Department of Vocal Performance.

A2a. **Good standing:** All students shall be matriculated and remain in current good standing with the Frost School throughout all components of the DQP.  Good standing is defined as no grade lower than a B in any course.  Should the student fail to remain in good standing, any components either completed or in progress may not be counted
toward the DQP.

---

Major Requirements for DMA Vocal Performance majors

1. Doctoral Qualifying Jury Recital (1/2 hour)
   a. Completed during 1st semester of study and no later than 2nd semester of study.
   b. Must be satisfactorily completed before scheduling Doctoral Qualifying Recital
   c. Students are allowed to reattempt once, no earlier than the semester following the initial attempt.
   d. Program notes will be submitted and orally defended at the Qualifying Jury Recital.
2. MVP Doctoral Qualifying Exam
   a. No earlier than 3rd semester of study
   b. Administered by the department once per semester
   c. Students are allowed to reattempt once, no earlier than the semester following the initial attempt
3. Doctoral Qualifying Recital (1 hour)
   a. No earlier than 3rd semester of study
   b. Must be satisfactorily completed before scheduling the other required Doctoral degree recitals
   c. Students are allowed to reattempt once, no earlier than the semester following the initial attempt.
4. Doctoral Recital (55-60 minutes of music) with program notes.
4. Doctoral Recital (55-60 minutes of music) with program notes.
5. DMA Essay Proposal Defense
6. DMA Essay Defense

A2b. **Recommended Schedule**

| Year 1 | Approved DQE coursework<br>Doctoral Qualifying Jury Recital<br>Oral Defense of Qualifying Jury Recital program notes | Approved DQE coursework<br>Doctoral Qualifying Recital (spring option)*<br>*Oral Defense of Qualifying Recital program notes<br><div align="center">OR</div><br>Doctoral Qualifying Jury Recital (spring option)<br>*Oral Defense of Qualifying Jury Recital program notes |
|---|---|---|
| Year 2 | Approved DQE coursework<br>MVP Doctoral Qualifying Exam<br>Doctoral Qualifying Recital (late option)<br>*Oral Defense of Qualifying Recital program notes (late option)<br>2nd Doctoral Recital (fall option) | MVP Doctoral Qualifying Exam (spring option)<br>Doctoral Essay Proposal Defense (standard track)<br>2nd Doctoral Recital |
| Year 3 | 3rd Doctoral Recital (fall option)<br>Doctoral Essay Proposal Defense (late track) | 3rd Doctoral Recital (spring option)<br>Doctoral Essay Defense |

B.    DQE Component Requirements

B1.    *Musicology general knowledge* requirements

The Musicology general knowledge exam component of the DQP will be satisfied by successful completion of ONE of the following courses with a grade of B or higher. These courses must be completed with a grade of B or higher, prior to the student being able to apply for candidacy.  Ideally, students should take one of these courses in their first year.  The acceptable courses are:

| MCY 622 | Operatic Literature | 3 | Spring, offered yearly |
|---|---|---|---|
| MCY 625 | Art Song Literature | 3 | Spring, offered yearly |
| MCY 683 | History of the American Musical Theatre* | 3 | Fall, offered yearly |
| MCY 794 | Special Topics in Musicology  (with MVP advisor approval only) | 3 | Fall, Spring |

* This option is available only to transfer students who have completed the equivalent of MCY522 or MCY525 in another institution.

B2.    *Music Theory general knowledge* requirements

The Music Theory general knowledge exam component of the DQP will be satisfied by successful completion of ONE of the following courses with a grade of B or higher. These courses must be completed with a grade of B or higher, prior to the student being able to apply for candidacy.  Ideally, students should take one of these courses in their first year.  The acceptable courses are:

| MTC 713 | Twentieth Century Idioms | 3 | Spring |
| MTC 717 | Analytical Techniques* | 3 | Fall, Spring |
| MTC711 | Theory Pedagogy | 3 | Fall |

* Prerequisite: Students must pass the Theory Entrance Exam.

B3. *Doctoral Qualifying Jury Recital*

The Qualifying Jury Recital typically occurs at the end of the first semester of study, and may be no later than the end of the 2nd semester of study. Students must have successfully passed a Doctoral Qualifying Jury Recital before they may schedule their first Doctoral Recital, Exams, or Oral Defense. Program notes for each piece will be submitted to the full-time voice faculty and will be orally defended at the jury recital performance.

*Doctoral Qualifying Jury Recital Requirements*

The *Doctoral Qualifying Jury Recital and Oral Defense of the Qualifying Jury Program Notes* are required of all Doctoral Vocal Performance and Vocal Pedagogy and Performance students.

The Doctoral Qualifying Jury Recital must be of the standard format and consist of 30 minutes of memorized music representing five historical periods and a minimum of four languages, which must include English, French, German and Italian. Although not required, students are encouraged to consider including repertoire in other languages. All repertoire will be chosen in consultation with the studio voice teacher and vocal coach. The historical musical periods will be understood to be baroque, classical, romantic, early 20th century (1900-1950) and late 20th century (1950-2000) and 21st century.  The repertoire will consist of at least six (6) pieces that are learned and prepared during the first semester of doctoral study at the Frost School.  The remaining recital material may consist of previously learned repertoire.

Doctoral Qualifying Jury Recitals shall be assessed by a panel of at least three (3), full-time regular members of the MVP faculty. Panel members shall be full-time Regular or Educator faculty; or part-time Associated faculty (Adjunct, Lecturer) with approval from the Department Chair.  Recitals shall be assessed by the panel using, at least, the Frost Student Recital Evaluation Form. Additional assessment measures may be required by the Department Chair.

B4.     *Oral Defense of the Doctoral Qualifying Jury Program Notes* (30-45 minutes)

In preparation for the Doctoral Qualifying Jury, students will write accompanying program notes.  Three weeks prior to singing the Doctoral Qualifying Jury, the student will email the program notes to the full-time, regular voice faculty.  In addition, the student will schedule an oral defense of the program notes with the Chair of the Department.  The oral defense will take place during the week before the departmental juries.  It will be taken before at least three (3) members of the full-time, regular department

faculty, including the principal teacher/advisor.  The faculty members administering the exam will review the assignment and ask the student to defend the program notes and/or discuss them in further depth.

During the oral exam, committee members will ask questions to test the depth of the student's knowledge and understanding of the material presented in the qualifying jury recital and more specialized information regarding the student's specific instrument.  This might include, but is not limited to further questions regarding the previous exam material and further performance-based evaluation, including text and music inferences and conclusions.  At the end of the oral exam, students will wait outside the room while the committee reaches a decision.  Two outcomes are possible, pass or fail.

B5. *Graduate Qualifying Recital* requirements

The Doctoral Qualifying Recital is the first of three major recitals required of all Doctoral Vocal Performance majors. (See: Department of Vocal Performance Graduate Handbook for specific recital repertoire requirements.)

B5a. The Doctoral Qualifying Recital must be of the standard format and consist of 55-60 minutes of memorized music representing four historical periods and at least four languages (English, French, German and Italian).  With approval of the full-time faculty, the recital may be a Special Topic Recital with 50-60 minutes of memorized music featuring the music of one composer, one language, one style period, etc. One week prior to the hearing, the student will email program notes to each full-time voice faculty member.

Program notes will be written for each piece programmed and the notes will be orally defended at the time of the recital hearing with the full-time voice faculty.

B5b. The Doctoral Qualifying Recital may occur any semester following the successful completion of the Doctoral Proficiency Jury Recital.

B5c. The Doctoral Qualifying Recital shall be assessed by a panel of four (4) faculty members, three of which must come from the MVP faculty, established by the candidate. Panel members shall be full-time Regular or Educator faculty, or part-time Associated faculty (Adjunct, Lecturer) with approval from the Department Chair.

Recitals shall be assessed by the panel using the Frost Student Recital Evaluation Form. The Department Chair may impose additional assessment measures.

The student will be notified of the results with an email from the Chair of the Department of Vocal Performance or Vocal Performance Program Director.

B6. *MVP Vocal Performance Doctoral Qualifying Examination*

The MVP Doctoral Qualifying Examination will be administered by the Department of Vocal Performance once per semester. The examination will be a comprehensive, written exam covering topics that may include vocal literature, historical development of oratorio, historical development of opera performance, historical development of art song literature. The examination will be given by the

Department of Vocal Performance one Saturday per semester and specific dates and test topics will be announced at the beginning of each school year.

The MVP Doctoral Qualifying Examination will result in one of three outcomes, determined by the designated MVP faculty:

- Pass
- Conditional pass—one part must be re-written
- Fail—entire written exam must be re-taken

In all cases, the student will be notified of the results by email from the Chair of the Department of Vocal Performance or the Vocal Performance Program Director.

A <u>Conditional Pass</u> means the student will re-write the section of the test that did not pass on the first attempt.  The student will be notified which section did not pass by the Department Chair.  The student may re-attempt the re-write one time.  Re-attempts must be scheduled the semester following the initial attempt.  Failure a second time will result in dismissal from the program.

A <u>Fail</u> will result in the student re-writing the entire exam.  The Department Chair will notify the student of the failure. The student may re-attempt the exam one time.  Re-attempts must be scheduled the semester following the initial attempt.  Failure a second time will result in dismissal from the program.

***MVP Vocal Performance Qualifying written exam*** will be given at a prescribed time and place each spring semester.  With the exception of the Doctoral Qualifying Jury Recital and Oral Defense of the Program Notes, students should plan on taking the written exam during the fourth semester of doctoral study.  The written examination will be approved, administered and graded by the Department of Vocal Performance faculty.  The University of Miami Graduate Rating Rubric will be used for grading the written test.  The student must receive an average score of 3 in each category or better to pass.

1. General Knowledge of International Phonetic Alphabet (60 minutes)
   Student will be given four art songs, one each in English, Italian, German and French.  The student will write an IPA translation for each text.  Student may not use any outside source for assistance in completing this section of the test.
2. General Knowledge of Poetic Lyric Translation (60 minutes)
   Excluding the English song, the student will choose two of the pieces given for IPA translation and provide a poetic, lyric translation of the text.  This translation would be appropriate for use in program notes, liner notes or book of translations.  The student may bring and use one dictionary in each language for translation assistance.  Online dictionaries may not be used.

3. Comprehensive Analysis within the Discipline (120 minutes)

   The student will choose two (2) topics from the following list:

   a. Two weeks prior to the examination date, the student will submit copies of four (4) classical vocal pieces, each in a different language, to the Chair of the Department of Vocal Performance.  Each score must be clean of any

markings with the exception of measure numbers.  Each piece must have measure numbers written in the score. At the time of the test, the student will be given a copy of the two (2) chosen pieces for written discussion. The student will discuss the (1) historical context, (2) compositional style and hallmarks, (3) information about the composer, (4) musical characteristics specific to the text, and (5) performance practice, i.e. historical knowledge of style considerations and scholarly thought on performance practice specific to that historical period, and (6) pedagogical issues that might arise when performing or teaching the specific songs.

b. Discuss the development of opera. Trace the changes and contributions during each historical period---baroque, classical, romantic and 20th century.

c. Discuss the development of the German Lieder in the 19th century.

d. Discuss the development of the French Mélodie during the Impressionist era.

e. Discuss the development of the English (either British or American) Art song in the 20th century.