UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 24-cv-20241-JB/Hunt

TIMOTHY OLIVER,

     Plaintiff,

v.

UNIVERSITY OF MIAMI,

     Defendant.

_____/

**ORDER GRANTING MOTION TO DISMISS**
**THIRD AMENDED COMPLAINT WITH PREJUDICE**

**THIS CAUSE** came before the Court on Defendant University of Miami's ("UM") Motion to Dismiss Third Amended Complaint ("Motion to Dismiss"). ECF No. [27]. Plaintiff Timothy Oliver filed a Response in Opposition ("Response"). ECF No. [29]. UM filed its Reply. ECF No. [31]. Upon due consideration of the parties' submissions, the pertinent portions of the record, and the relevant legal authorities, for the reasons explained below, the Motion to Dismiss is **GRANTED**. Given that Plaintiff has received multiple opportunities to amend his pleading but is still unable to state a claim for relief, the Third Amended Complaint is **DISMISSED WITH PREJUDICE**.

I.    **BACKGROUND**

In August 2020, Plaintiff enrolled as a doctoral student in the Department of Vocal Performance at UM's Frost School of Music seeking a

1

Doctor of Musical Arts degree in Vocal Performance.  ECF Nos. 26 at ¶ 8; [26-6].  Plaintiff is an African-American male, and alleges that he was "the sole African-American in the Doctoral Program in the Department of Vocal Performance in both years that [he] was enrolled in the University of Miami's Frost School of Music."  ECF No. [26] at ¶¶ 6, 50-51.  Doctoral students such as Plaintiff are required to pass a Doctoral Qualifying Jury Recital (the "Jury Recital") before they can schedule their Doctoral Qualifying Recital ("Doctoral Recital") and, later, their Doctoral Qualifying Examination ("Doctoral Exam").  ECF No. [26-1] at 4.  A student must successfully complete the Jury Recital, Doctoral Recital, and Doctoral Exam before he can apply for and be granted Doctoral Candidacy Status.  *Id.*

### A.   Alleged Discriminatory Treatment

In February 2021, Plaintiff applied for a Teaching Assistant ("TA") position but was not chosen.  ECF No. [26] at ¶ 37.  Plaintiff alleges that he was the only returning graduate student who expressed an interest in but was not given a TA position, which were awarded to a Caucasian female and a Hispanic female.  *Id.*  According to Plaintiff, "seven members of the voice faculty collectively make the choice to award TA positions . . . ."  *Id.* at ¶ 37.  Plaintiff alleges that "upon information and belief," the decision not to award him a TA position "was based on Mr. Oliver's race since Defendant failed to articulate a legitimate reason for him not to be given a TA position."  *Id.*

In February 2021, Plaintiff learned that his academic advisor, Professor Alan Johnson, had suggested to "other doctoral students" that they take a theory class titled "Music Theory Pedagogy," which Plaintiff alleges is a "far less rigorous" course than the class Professor Johnson advised Plaintiff to take, which was "Music Theory Analytical Techniques." *Id*. at ¶¶ 38-39. These other students allegedly received an "A" in Music Theory Pedagogy, while Plaintiff received a "B-" in Music Theory Analytical Techniques.  In May 2021, Plaintiff "reported this information to Dr. de l'Etoile, the Associate Dean of Graduate Studies, who felt this may have been discriminatory." *Id*. at ¶ 39.

In August 2021, Plaintiff enrolled in a Voice Forum course in which students were grouped together in either the "Veterans" group or the "New Grads" group. *Id*. at ¶¶ 40-41.  Plaintiff alleges that he was the only returning graduate student placed in the "New Grads" group rather than the "Veterans" group. *Id*. at ¶¶ 41-42.  Plaintiff does not allege what harm, if any, he suffered from this incident, but nonetheless alleges that "upon information and belief," the purported mischaracterization "subjected [Plaintiff] to disparate treatment because of his race." *Id*. at ¶ 43.

In December 2021, Plaintiff informed the Chair of the Vocal Performance Department that Plaintiff was not part of the listserv for that semester, which prevented him from scheduling his Jury Recital. *Id*. at ¶ 46. The Chair responded to Plaintiff's e-mail and forwarded him the information to sign up for a Jury Recital. *Id*. at ¶ 47.  Although initially the only time slot

left was in the morning, which Plaintiff alleges "is not an ideal time for singing high notes," Plaintiff agreed to move the time of his Jury Recital to the last time slot of the evening "because it is much easier to sign in the evening than the morning." *Id.* at ¶¶ 47-48.

Plaintiff alleges that he made two complaints of race discrimination: one to the Dean of the Graduate School in August 2021, and one to the Associate Dean of Graduate Studies and Dean of Students on December 13, 2021. *Id.* at ¶ 53. Plaintiff does not describe the content of these complaints or the manner in which they were made, alleging only that "[t]he complaints dealt with several incidents regarding unequal treatment set forth above." *Id.* On February 10, 2022, the Frost School of Music forwarded Plaintiff's complaints to UM's Office of Diversity, Equity, and Inclusion "who concluded that [Plaintiff's] complaints based on race were unsubstantiated." *Id.* at ¶ 54.

**B.    Alleged Discrimination and Retaliation in the Jury Recital**

In Spring 2021, Plaintiff attempted his Jury Recital but did not pass. ECF No. [26-6]. The Doctoral Qualifying Process Procedures (the "Procedures") in effect at the time of Plaintiff's enrollment (the "2016 Procedures") and at the time he attempted his Jury Recital state that a student is allowed one opportunity to reattempt the Jury Recital. ECF Nos. [26-1] at 4; [26-2] at 4. Accordingly, in December 2021, Plaintiff reattempted his Jury Recital. Plaintiff again did not pass, allegedly "based on his singing." ECF No. [26] at ¶¶ 16-17.

The Jury Recital has two components, a signing component, and an oral defense component, and is assessed by a panel of at least three (3) full-time members of the faculty.  ECF Nos. [26-1] at 6; [26-2] at 6.  Plaintiff alleges that under the 2016 Procedures, "a student cannot pass or fail the jury based on the singing," and the oral defense component is "[t]he only portion of the qualifying jury that a student can pass or fail . . . ."  ECF No. [26] at ¶¶ 19-20.

On January 19, 2022, Plaintiff wrote a letter to the Chair of the Department of Vocal Performance asking to appeal the panel's decision on the basis that it violated the Doctoral Qualifying Process Procedures.  *Id*. at ¶ 19.  The next day, Plaintiff received a letter from the Associate Dean of Graduate Studies dismissing him from the Doctor of Musical Arts degree program in Vocal Performance because he did not pass his two attempts at the Jury Recital and "[p]er MVP policy: [f]ailure a second time will result in dismissal from the program."  ECF No. [26-6].

At Plaintiff's request, the Associate Dean sent Plaintiff the MVP policy relied upon in her letter.  ECF No. [26-5].  The MVP policy is another version of the Doctoral Qualifying Process Procedures and is dated August 2021 (the "2021 Procedures").  ECF No. [26-2].  According to the Associate Dean, the 2021 Procedures were drafted "in an effort to make the policy more clear" and were posted to the Graduate Studies website in December 2021.  ECF No. [26-5].

Both the 2016 and 2021 Procedures state that the Jury Recital "[m]ust be satisfactorily completed *before* scheduling the Doctoral Qualifying Recital."

ECF Nos. [26-1] at 4; [26-2] at 4.  Both Procedures also state that "[s]tudents are allowed to reattempt [the Jury Recital] once," although the 2021 Procedures further state that "[f]ailure a second time will result in dismissal from the program."  ECF No. [26-2] at 4.

Plaintiff appealed his dismissal pursuant to UM's Graduate Appeals Process, and the appeal was "denied at both the Department and the school levels[.]"  ECF No. [26] at ¶ 25.  In February 2022, Plaintiff further appealed his dismissal to the Dean of the Graduate School who "partially granted" Plaintiff's appeal "on the basis that [he] was not given the opportunity to defend [his] Doctoral Qualifying Jury Program Notes as stated in the Doctoral Qualifying Process Procedures."  ECF No. [26-7].  The Dean allowed Plaintiff to complete the oral defense, following which Plaintiff would be allowed to retake the singing portion of his Jury Recital.  *Id*.

On May 6, 2022, Plaintiff completed his third attempt at the Jury Recital in accordance with the Dean's decision.  ECF No. [26] at ¶ 33.  Again, Plaintiff did not pass.  *Id*. at ¶ 34.  The voice faculty panel allegedly informed Plaintiff that he failed the oral defense component because his program notes incorporated aspirational elements.  *Id*. at ¶ 35.  Plaintiff alleges that his professor previously told him to include aspirational elements in his program notes and, thus, the panel's decision "was contradictory to their own advice and arbitrary and capricious."  *Id*.

On May 11, 2022, having failed to pass the Jury Recital three times, Plaintiff received a letter of dismissal from the Associate Dean of Graduate Studies.  ECF No. [26-8].   The Associate Dean explained as follows:

> According to MVP policy . . ., students pursuing the Doctor of Musical Arts degree in Vocal Performance are required to pass a Doctoral Qualifying Jury as the first step toward candidacy and are allowed to reattempt the jury one time.
>
> Your spring 2021 jury was considered your first attempt, which you did not pass. Your fall 2021 jury was considered your second attempt, which you also did not pass. You defended your program notes at your fall 2021 jury, but were not given written feedback. In spring 2022, you again sang the doctoral qualifying jury and defended your program notes. The MVP faculty determined that you did not pass the jury or the program notes defense, and provided written feedback on both components. You were informed of this decision on May 10, 2022.
>
> Per MVP policy: "Failure a second time will result in dismissal from the program." Consequently, please consider this document to be your letter of dismissal from the Doctor of Musical Arts degree program in Vocal Performance.

*Id*.  Plaintiff did not appeal this decision.

Plaintiff alleges that the Frost School changed its Doctoral Qualifying Process Procedures in 2021 in order to discriminate and retaliate against him, as he was the only student who was graded using the 2021 Procedures "because no other student took the Doctoral Qualifying Jury exam in the Spring 2022 semester," and after his dismissal, the 2021 Procedures were allegedly changed back to the version in effect at the time of his enrollment.  ECF No. [26] at  *Id*. at ¶¶ 24, 31, 80, 88-89.  Plaintiff further alleges that his failing grade on the May 2022 Jury Recital and subsequent dismissal from the program was in

retaliation for his earlier complaints of race discrimination because these events occurred after the February 2022 investigation into his complaints concluded. *Id.* at ¶¶ 91-92.

## II.     THE INSTANT MOTION

The Third Amended Complaint asserts three causes of action: Count I for breach of implied contract, Count II for race discrimination, and Count III for retaliation. ECF No. [26]. UM filed a Motion to Dismiss the Third Amended Complaint With Prejudice. ECF No. [27]. UM argues that Plaintiff fails to state a claim for breach of implied contract because he: (i) does not plausibly allege that UM failed to adhere to its grading policy, (ii) failed to plausibly allege that UM changed its requirements for doctoral Vocal Performance students for the purpose of giving Plaintiff a failing grade, and (iii) cannot establish a breach of implied contract even if UM changed its grading policy because UM reserved the right to amend its policies and procedures. *Id.* at 9-15. With respect to Count II, UM argues that Title VI does not create a private right of action for disparate impact, and Plaintiff has failed to allege any facts demonstrating that UM intentionally discriminated against him because of his race. *Id.* at 15-18. Finally, UM contends that Plaintiff fails to state a claim for retaliation because he has not alleged sufficient facts to establish a causal connection between his race and the failing grade he received on his Jury Recitals.

Plaintiffs filed a Response in Opposition. ECF No. [29]. Plaintiff argues that he does state a claim for breach of implied contract because it was arbitrary and capricious for UM to change its Doctoral Qualifying Process Procedures in 2021, and UM did not have the right to do so without clear and direct communication to its students. *Id*. at 14-17. With respect to Count II, Plaintiff argues that he plausibly alleges a claim for race discrimination because Plaintiff is a member of a protected class, who suffered an adverse action in the form of dismissal from Doctor of Musical Arts degree program in Vocal Performance, and was treated differently than similarly situated students who were not members of the protected class. *Id*. at 17-20. Finally, Plaintiff contends that he states a plausible claim of retaliation because he allegedly engaged in statutorily protected expression in the form of two complaints of race discrimination, was subjected to a materially adverse act in the form of dismissal, and a causal connection exists between the two events. *Id*. at 20-23.

## III. ANALYSIS

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must

"plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (alteration added) (citing *Twombly*, 550 U.S. at 556).

Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (alteration added) (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. On a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts its factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). Unsupported allegations and conclusions of law, however, will not benefit from this favorable reading. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

### A.    Plaintiff Fails to State a Claim for Breach of Implied Contract.

"In Florida, a student's relationship with his or her private university is contractual in nature." *Dixon v. Univ. of Miami*, 75 F.4th 1204, 1208 (11th Cir. 2023) (citations omitted). The contract terms "'may be derived from university publications such as the student handbook and catalog.'" *Dixon*, 75 F.4th at 1208 (quoting *Fla. Int'l Univ. Bd. of Trs. v. Alexandre*, 365 So.3d 436, 440 (Fla. 3d DCA 2023)). The publications "may set forth the terms under which it will

admit and subsequently graduate students who subject themselves to the rules, regulations and regimen of the college." *Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929 (11th Cir. 2013) (quoting *Univ. of Miami v. Militana*, 184 So.2d 701, 704 (Fla. 3d DCA 1966)). "Under this contract implied in fact, the student 'pays a fee for services' and the private university provides 'an educational experience designed to lead to a . . . degree'" *In re Univ. of Miami COVID-19 Tuition and Fee Refund Lit.*, 524 F. Supp. 3d 1346, 1352 (S.D. Fla. 2021) (citation omitted). "To succeed on a breach-of-contract claim, a student-plaintiff – like any other plaintiff – must establish '(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach.'" *Dixon*, at 1208 (citations omitted).

Plaintiff has failed to plausibly allege a breach of the parties' implied contract.  Plaintiff alleges that UM breached the implied contract by engaging in "policy violations" and subsequently dismissing him from the Vocal Performance doctoral program.  ECF No. [26] at ¶ 26.  In particular, Plaintiff alleges that UM improperly gave him a failing grade on the singing component of his December 2021 jury recital because "a student cannot pass or fail the jury based on the singing."  *Id.* at ¶ 19.  Plaintiff attaches both the 2016 and 2021 Procedures to his Third Amended Complaint, but neither prohibits the faculty panel from assigning a failing grade to the singing component of a student's Jury Recital.  *See* ECF Nos. [26-1] at 5-6; [26-2] at 6-7.  The assertion that a student seeking a Doctor of Musical Arts degree in Vocal Performance

cannot be given a failing grade on the vocal portion of his Jury Recital, or that the school must allow the student to advance to the next stage of the doctoral qualifying process despite having poor vocal skills, is simply not plausible.  In short, a claim that UM breached the parties' implied contract by finding that a vocal performance doctoral candidate failed his Jury Recital because of unsatisfactory vocal ability does not state a claim for relief that is plausible. Indeed, "the law does not require . . . schools to retain students who cannot perform the coursework . . . ." *Nehme v. Florida Int'l Univ. Bd. of Trustees*, 121 F. 4th 1379, 1384 (11th Cir. 2024).

Plaintiff also alleges that UM breached the implied contract by changing the Doctoral Qualifying Process Procedures before his December 2021 Jury Recital, and then failing him based on the revised policy.  ECF No. [26] at ¶ 26.  According to Plaintiff, the 2016 Procedures were "changed to read that if either component of the Doctoral Qualifying Jury was not passed, whether the singing or Oral Defense of program notes, then the jury would not be passed." ECF Nos. [26] at ¶ 26; [29] at 6-7.  Although Plaintiff attaches the 2021 Procedures to the Third Amended Complaint, he does not quote or cite the specific provision that contains such language.  Further, the 2016 Procedures state that "The *Doctoral Qualifying Jury Recital* and *Oral Defense of the Qualifying Jury Program Notes* **are required** of all Doctoral Vocal Performance . . . students."[1]  ECF No. [26-1] at 6 (bold emphasis added).

_____

[1] Exhibits attached to a Complaint are properly considered part of the

Plaintiff fails to explain how this language is meaningfully different than the 2021 Procedures, which allegedly state that a student must pass both the singing and oral defense portions in order to pass the Jury Recital.

The heart of Plaintiff's claim is that UM breached the parties' implied contract by improperly deciding that Plaintiff did not pass any of this three Jury Recital attempts.  However, courts "must 'show great respect for the faculty's professional judgment' when it comes to a 'genuinely academic decision' — such as a claimant's 'fitness to remain a student.'"  *Nehme*, 121 F. 4th at 1383 (quoting *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 (1985)).  "Indeed, the 'faculty must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation.'"  *Id.* at 1383 (quoting *Nehme*, 474 U.S. at 225).

For these reasons, the Court finds that Count I for breach of contract must be dismissed because it fails to state a claim for relief.

### B.   Plaintiff Fails to State a Claim for Race Discrimination.

Count II asserts a claim for race discrimination under § 601 of Title VI of the Civil Act of 1964, which provides that "[n]o person . . . shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or

---

pleadings for all purposes, including a Rule 12(b)(6) motion. *Solis–Ramirez v. United States Dep't of Justice,* 758 F.2d 1426, 1430 (11th Cir.1985).

activity receiving [f]ederal financial assistance." 42 U.S.C. § 2000d. It is well-established that "Title VI itself directly reach[es] only instances of intentional discrimination." *Alexander v. Sandoval*, 532 U.S. 275, 282-83 (2001); *see also Farrukh v. Univ. of S. Fla. Bd. of Trs.,* No. 21-13345, 2022 WL 3973703, at *3 (11th Cir. Sept. 1, 2022) ("To state a claim under Title VI, 'a plaintiff must establish discriminatory *intent*.'") (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1202 (11th Cir. 1999)). Notably absent from the Third Amended Complaint are any factual allegations that show a decisionmaker harbored discriminatory animus toward Plaintiff. Indeed, Plaintiff often does not identify the decisionmakers involved, such as those that declined to award him a TA position, did not include him on the listserv, or were on the faculty panel that graded Plaintiff's Jury Recitals—much less allege any facts to support the conclusion that they acted with discriminatory intent. The same is true with respect to the decisionmakers Plaintiff does identify, namely Professor Johnson, the Associate Dean of Graduate Studies, and the Dean of the Graduate School, because he offers only conclusory allegations—devoid of any factual support—to support the assertion that he was subjected to discriminatory treatment. "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Arrington v. Miami-Dade County Public School District*, 835 F. App'x 418, 420 (11th Cir. 2020).

14

In his Response, Plaintiff argues that he stated a plausible claim of race discrimination because he was the only African American student in the Doctoral Program in the Department of Vocal Performance, and UM allegedly changed the Doctoral Qualifying Process Procedures before his December 2021 jury recital and then changed the policy back to the 2016 version after he was dismissed from the program. ECF No. [29] at 19-20. Such allegations standing alone are insufficient to plausibly show that the alleged policy change occurred because of Plaintiff's race, particularly since Plaintiff does not allege who crafted the revised policy or any facts to show that such individual(s) were motivated by racial animus. In short, "the inferential leap" from these allegations to the conclusion that UM acted with discriminatory intent "is too great." *Holland v. Carnival Corp.*, 50 F. 4th 1088, 1096 (11th Cir. 2022).

Plaintiff also argues that he "can raise an inference of discrimination by showing that he was treated less favorably than an individual outside of his protected group if the individual with whom he seeks to compare himself is similarly situated in all material respects." ECF No. [29] at 18 (citing *Graham v. Long Island R.R.*, 230 F. 3d 34, 39 (2d Cir. 2000)). However, as Plaintiff also acknowledges, "[t]o be similarly situated . . . there should be a reasonably close resemblance of facts and circumstances." *Id.* (citing *Lizardo v. Denny's Inc.*, 270 F. 3d 94, 101 (2d Cir. 2001)). Plaintiff's argument is unavailing because the Third Amended Complaint does not identify any students who are similarly situated to Plaintiff, nor does it allege any facts to support such a conclusion.

Accordingly, Count II fails to state a claim for race discrimination and must be dismissed.

### C.   Plaintiff Fails to State a Claim for Retaliation.

"Title VI's prohibition on racial discrimination is also construed as prohibiting retaliation for complaining about discrimination." *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178 (2005) (recognizing a cause of action for retaliation under Title IX); *Shotz v. City of Plantation*, 344 F.3d 1161, 1170 n.12 (11th Cir. 2003) (construing Titles VI and IX *in pari materia*).  To allege a *prima facie* case of retaliation, a plaintiff must allege facts that show "(1) that he engaged in statutorily protected expression; (2) that he was subjected to a materially adverse act; and (3) that a causal link existed between the two events." *McCullough v. Bd. of Regents of the Univ. Sys. of Ga*, 623 F. App'x 980, 982 (11th Cir. 2015).

Plaintiff alleges that he complained of race discrimination to the Dean of the Graduate School in August 2021 and made another complaint of race discrimination to the Associate Dean of Graduate Studies and Dean of Students on December 13, 2021.  ECF No. [26] at ¶ 53.  Count III alleges that UM engaged in two acts of retaliation: (i) creating the 2021 Procedures and holding Plaintiff to that revised standard when no other student was graded under the revised policy, and (2) giving Plaintiff a failing grade on his May 2022 jury recital, and then dismissing him from the program, which occurred after the investigation into his complaints concluded.  *Id.* at ¶¶ 86-92.

The causation element of a retaliation claim "requires more than some sort of temporal proximity between the employee's complaints and the adverse employment action.  Proof of the decisionmaker's knowledge or awareness of those complaints is also required."  *McCreight v. Auburn Bank*, 117 F. 4th 1322, 1339 (11th Cir. 2024).  The Third Amended Complaint contains no such allegations.  Plaintiff fails to allege which individual(s) drafted the 2021 Procedures, which are dated "August 2021," ECF Np. [26-2], much less that the individual(s) knew of Plaintiff's complaint to the Dean of the Graduate School.  Further, Plaintiff does not identify the faculty panel who graded his December 2021 jury recital or allege any facts to show that they knew of Plaintiff's complaint to the Dean.  Moreover, it is not plausible to allege that the Dean retaliated against Plaintiff, given that the same Dean allowed Plaintiff to complete a third attempt at his Jury Recital when both the 2016 and 2021 Procedures allow a student only two attempts to achieve a passing grade.  *See* ECF Nos. [26-1] at 4; [26-2] at 4; [26-7].

Nor can Plaintiff's December 2021 complaint to the Associate Dean of Graduate Studies and Dean of Students plausibly support a claim that the faculty panel graded him under the 2021 Procedures in an act of retaliation because his December 2021 jury recital took place *before* Plaintiff made that complaint.  *See* ECF No. [26] at ¶ 16 ("[O]n December 10, 2021, Mr. Oliver conducted the Doctoral Qualifying Jury . . ."); ¶ 53 ("Mr. Oliver complained about discriminatory treatment of race discrimination . . . [on] December 13,

2021 to Dr. de l'Etoile, Associate Dean of Graduate Studies at the Frost School of Music and Dean Holmes, Dean of Students at The University of Miami.").

With respect to Plaintiff's May 2022 jury recital and subsequent dismissal from the program, again Plaintiff does not identify the faculty panel that graded him, or allege any facts to show these decisionmakers knew of his August 2021 or December 2021 complaints when they decided that Plaintiff did not pass. Plaintiff also cannot show a temporal link between his complaints and his failing grade on the May 2022 recital or his May 2022 dismissal because they occurred too remote in time. Even merely "[a] three-month temporal gap, without more, does not establish the needed inference of causation." *Bowers v. Bd. of Regents of Univ. Sys. of Georgia*, 509 Fed. App'x 906, 911 (11th Cir. 2013).

Perhaps in recognition of this deficiency, Plaintiff alleges that his "failing grade on May 6, 2022" gives rise to an inference of retaliation because it occurred after the February 2022 investigation into his complaints concluded. ECF No. [26] at ¶ 91. Plaintiff does not allege the date on which the investigation concluded. However, even it was close in time to his May 2022 jury recital, that still is insufficient to give rise to a plausible inference of retaliation because Plaintiff fails to allege who conducted the investigation into his complaints, or that the faculty panel was aware of the investigation or its results. Indeed, Plaintiff alleges that a different body—the Office of Diversity, Equity, and Inclusion—concluded that Plaintiff's complaints were

unsubstantiated.  *Id*. at ¶ 53.  Simply put, the Third Amended Complaint contains no facts which plausibly connect the February 2022 investigation to Plaintiff's failing grade on his May 2022 jury recital.

Notably, Plaintiff's dismissal from the program was in accordance with both the 2021 and 2021 Procedures, which state that the Jury Recital "[m]ust be satisfactorily completed *before* scheduling Doctoral Qualifying Recital," and the Doctoral Qualifying Recital "[m]ust be satisfactorily completed *before* scheduling the other required Doctoral degree recitals."  ECF Nos. [26-1] at 4; [26-2] at 4.  Plaintiff was given three chances to pass the Jury Recital, even though the Procedures allow students only two attempts, and he failed each of the three.  In light of these facts, Plaintiff cannot plausibly allege that his dismissal constituted retaliation.

For the foregoing reasons, Count III fails to state a claim for retaliation.

## IV.   CONCLUSION

Plaintiff has had four (4) opportunities to state a claim for relief, but has been unable to do so.  At this point, dismissal with prejudice is warranted. Accordingly, for the reasons set forth above, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Third Amended Complaint, ECF No. [27], is **GRANTED** and the Third Amended Complaint, ECF No. [27], is **DISMISSED WITH PREJUDICE**.  The Clerk is directed to **CLOSE** this

case, and any pending motions are **DENIED AS MOOT**.

       **DONE AND ORDERED** in Chambers at Miami, Florida, this 18th day of February, 2025.

_____

**JACQUELINE BECERRA**
**UNITED STATES DISTRICT JUDGE**